Anderson, J.
The homestead article of the constitution of Virginia has been judicially construed, both by the federal and state courts, to confer a personal privilege upon the “householder or head of a family”; and the question, and only question, in this case is, Is the appellant, who claims the benefit of this provision of the constitution, a householder or head of a family? This provision was not made for all persons who are residents of the state, but for a particular class of persons; otherwise it would not be limited to a “ householder or head of a family.” Who are embraced in that description? Worcester gives two significations to the term householder: “1st. The occupier of *20 a house”; 2d. The master of a family.” In which of these senses is it used in the constitution ? If in the second sense, it is nearly" synonymous with the terms “head of a family.” And if used in that sense, then the second phrase—“ head of a family ”—was intended as explanatory of it. This mode of expression is not unusual in writings. When the first phrase is considered not sufficiently explicit or definite, a second is used to give the meaning with greater definiteness and clearness. And this is peculiarly appropriate when the design is to describe one particular class of persons, and not two distinct classes. If the language of the first description is not sufficiently precise or explicit, but may have two significations given to it, one of which is not descriptive of the class of persons intended, whilst the other is, the writer, in order to make his meaning certain, will use another term which shows in which sense he has employed the first phrase or term. And I think such was evidently the intention of the draughtsman of this clause of the constitution, and that the second description of the persons who were to be entitled to the privilege, was intended to be explanatory of the first, and not to constitute two classes of persons.
But if the term “householder” was intended to be descriptive of a different class from the “ head of a family,” it was intended to give the privilege to two distinct classes of persons; and if so, the copulative conjunction “and” would have been used, instead of the disjunctive “or,” so as to read “every householder and every head of a family shall be entitled,” &c.
But we need not confine ourselves to the definition given by the lexicographers. The term was evidently employed by the framers of the constitution in the sense in which it is commonly used. The term household literally means the inmates of the house—the family—those whom the house holds. The term is frequently used in the sacred scriptures, especially in the epistles of the New Testament, *21 which, in the English version, is probably the best standard of the meaning of our language in common use. And the term household is so used in common parlance and friendly correspondence by letter. What is more usual than to send messages of regard or affection by the writer to the household ? Such messages are universally meant for the family—the inmates of the house. And if they constitute the household, who can be meant by the “householder” but the “head of the family”? But whilst we hold that by the “householder” is meant the head of a family, we do not mean to say that every head of a family must be, necessarily, a householder.
But the whole scope of the article shows that the privilege was intended not so much for the benefit of the person to whom it is given, as for the benefit of his family; to enable the person to whom it is given to use it to save-his family from suffering and want. To this end, it was necessary that the head of the family should have the-power to shield a portion of his property from levy and sale under execution or distress, or other process. In Shipe, Cloud & Co. v. Repas & als., 28 Gratt. 716, 733, Judge Staples remarked “ that no one can look into-the provision of our constitution, and the adjudicated eases-of other states, and fail to see that the primary object is-to provide for the family. As was said by the supreme-court of Ohio in Sears v. Hanks, 14 Ohio R. 498, 501, the humane policy of the homestead act seeks not the protection of the debtor, but its object is to protect his family from the inhumanity which would deprive its dependent members of a home.”
That such was the intention of the framers of our constitution, to this end, to confer the privilege upon a person who had a family, and not upon the mere occupier of a-house, I think is further shown by the 5th section of the-article, which pi’ovides that the general assembly “shall prescribe in what manner, and on what conditions, the- *22 said householder or head of a family shall thereafter set apart and hold for himself and family,” &c., “and may in. its discretion determine in what manner and on what conditions he may thereafter hold for the benefit of himself and family.” I think this language plainly shows that the householder intended was one who had a family.
Indeed, the whole theory and policy of the homestead is founded upon the principle that there is a natural and moral obligation on the head of a family to provide for the support of his wife and children and other persons dependent on him, towards whom he stands almost in loco parentis, which is, if not paramount, equal to his obligation to pay his debts. Whether it is sound in morals or not, is not the question. It is evidently the ground upon which the homestead was made a constitutional provision, as I think the debates in the convention which framed it will show.
The family may consist of a wife and children, or of other persons, who may stand in a state of dependence in the family relation; or it may consist of persons standing in either of these relations to the head of the family, whether the father, or mother, or a brother, or a sister, or other relation, is the head; but they must be persons who are dependent, in some measure, on the head for support, and who have an interest in his holding his property, and would be prejudiced by its seziure and sale under execucution, or other process, and who would be benefitted by its exemption.
The foregoing view I think is supported by a fair and liberal construction of the homestead article of the constitution, according to the intent of its framers, as gathered from its language and its general scope, and the object sought to be attained. And it is in harmony with-the adjudications on thesubject. In Bowen v. Witt, 19 Wend. R. 475, the court said “the statute declares that the following property when owned by any person being a householder *23 ■shall be exempt from execution,” &e., and in determining what was meant by the word “householder” in that statute, •said it “ means the head, master, or person who has •charge of, and provides for a family.”
The terms “householder,” and master, or chief of a family, are used interchangeably, as meaning the same thing. In Thompson on Homestead, § 66, it is said “ If a person professes the character of a householder—that is, if he is the master or chief of a family, he does not lose it by his temporarily ceasing to keep house.”
The constitution of Georgia, adopted in 1868, guarantees a homestead to each “ head of a family,” or guardian, •or trustee of a family of minor children. And the supreme court of the state held, that a single man, having no person dependent on him for a support, is not within the meaning of this provision “the head of a family.” (Thompson on Homestead and Exemptions, citing Lynch v. Pace, 40 Georgia R. 173). What constitutes a family was considered with reference to the Texas constitution of 1845 and 1866, providing for the exempting from forced sale of property of “ all heads of families,” &c. It was held that the term family was used in its generic sense, embracing a household composed of parents and children, or other relatives, or domestics and servants; in short every collective body of persons, living together within the same curtilage, subsisting in common, directing their attention to a common object—promotion of their mutual interests and social happiness. Id. § 44— citing Wilson v. Cochran, 31 Texas R. 677.
The duty to support is also made the test. He upon whom the law imposes such a duty, growing out of status, and not out of contract, and the persons to whom he owes this duty, if dwelling together in a domestic establishment, constitute a family, of which he is the head. Ibid, •§ 45—citing Whaler v. Cadman, 11 Iowa R. 226; Marsh v. Lazenby, 41 Georgia R. 153; Sallee v. Waters, 17 *24 Alabama R. 482; Sanderlin v. Sanderlin’s adm’or, 1 Swan’s R. 441. The writer says, the courts have adopted' more humane rule, that a moral duty on the managing member of the domestic association to support the others, or some of them, will be sufficient to constitute the association a family, and the manager of it the head of a family.
There are cases which say that to constitute a family within the meaning of such statutes there must be a condition of dependence, and not a mere aggregation of individuals. Ib. § 46.
The relation of master and servant, or, more properly speaking, of employer and employee, as it ordinarily exists in this country, does not constitute a family. And therefore a single man, who has no other persons living with him than servants and employees, is not the head of a family, within the meaning of statutes creating homestead exemptions. Ib. § 47, citing Garaty v. Dubose, 5 South Car. R. 493; Calhoun v. McLinden, 42 Ga. R. 405. The adjudication of seven of the states of the Union, to which I have referred, are mostly taken from the citations of Mr. Thompson’s works on Homesteads and Exemptions, not having access here to the books in which the cases are reported. Although I do not mean to express a concurrence in all they say, I rely upon them so far as they are in harmony with the views I have presented in relation to the Virginia constitutional homestead provision.
It now only remains briefly to apply these doctrines to the case in hand. Was the appellant a “ householder” or “ head of a family ” in the sense in which those terms are used in the constitution ?
He had lived upon his own land for about eighteen years. He was never married. On the 17th of February, 1858, his father and mother conveyed to him a tract of one hundred acres of land, in consideration that he would support them during their natural lives; and they soon *25 after left their own house, and came to live with him. . But both of them died, and he occupied the house alone, no one living with him except his employees. He the right to hold his property as a homestead, which he values at $1,680—probably all he owns—and which is a very low valuation, if his estimate of the value of the land is proportioned to its real value in the same ratio of his estimate of his personal property to its real value. He, an unmarried man, without a family to provide for, and no one dependent on him for support, seeks to hold all this property under the homestead, to avoid the payment of an honest debt of the inconsiderable amount of $115, and interest on it from the 16th of November, 1874, and $7.20 costs. I agree with the judge of the circuit court of Smythe county, that it cannot be done—that the homestead was not designed to enable a man who had neither-wife, nor children, nor others dependent on him, to withhold his property, on the faith of which he had contracted a debt, from its payment, which he was in common honesty bound to pay; and thus to take his neighbor’s property, or services, under a promise to pay for them, and then force him to lose them, although fully able to pay for them. For such an act he cannot offer the plea, upon which the right of the homestead is claimed, that he has a wife, or children, or a family of poor and needy persons,, who are dependent on him, and have claims on him, and for whose support a moral obligation rests on him.
He can make no such plea; and therefore the homestead provision was not designed for him. For the care of a widow who is childless and lives alone, whose husband died without having a homestead assigned to him in his lifetime, we refer to chap. 183 of the Code of 1873, § 10;-not intending now to indicate any opinion as to the proper construction of said section, as no question arises upon it in this case.
In reaching our conclusions, we have not been unmind— *26 ful of § 7 of the homestead article of the constitution, which requires that the provisions of said article “ shall be construed liberally, to the end that all the intents thereof maybe fully and perfectly carried out”; and have endeavored to give such a liberal construction to it as will give effect to the intention of its framers.
For the foregoing reasons, I am of opinion to affirm the decree of the circuit court, with costs.
The other judges concurred in the opinion of Anderson, J.
Decree appirmed.