# Richmond.

## WILKINSON V. MERRILL AND ALS.

March 19th, 1891.

1. HOMESTEAD EXEMPTION— *When it ceases.*—Where homestead exemption has been regularly set apart, it is for the benefit of the householder and *his family*, and is not ended by the latter's decease. Constitution, Article XI, ⸹ 5.
2. CASES OVERRULED.—*Calhoun* v. *Williams*, 32 Gratt., 18, overruled.

Appeal from decree of circuit court of city of Alexandria, rendered March 29th, 1889, in a chancery suit wherein Margaret Merrill and John M. Truslow were complainants, and James H. Wilkinson was defendant. Decree being adverse to defendant, he appealed. Opinion states the case.

*F. L. Smith*, for the appellant.

*J. M. Johnson*, for the appellees.

LACY, J., delivered the opinion of the court.

The appellant was a householder in the city of Alexandria, who, being indebted, in May, 1883, in a suit in a court of competent jurisdiction, had had set apart to him as a homestead the house and lot situated in the said city, where he resided, and which said house and lot is in controversy here. At this time the family of the said householder consisted of

VOL. LXXXVII—65

himself and his little grandson, a boy of tender years, being nine or ten years of age, and a son who was of age and worked out on his own account, but received occasional aid, as need required, from his said father.

In 1884 the appellee, John M. Truslow, one of his creditors, to whom he owed about two hundred dollars, enticed the child with him down the Potomac river on an excursion with an order known as the "Red Men," and on the return to the city at night the child was mysteriously drowned, and his body recovered from the river some days afterwards. No account and no report of this was made by Truslow to the child's mother, who did not live with the grandfather, nor to the grandfather (the appellant), and the mother knew nothing of the little boy's death until his body was found in the river. The boy's grandfather did not know of the death, nor of the whereabouts of the child, for a day or two afterwards, when he "was running around and did not know where he was," as he says, until he heard at the house of the witness, Quinn, that the appellee, Truslow, had been there bragging that the child was out of the way, saying: "The old rascal is gone up now; he can't claim the homestead now; Johnny is gone; he was drowned last night." That he had taken the child down there, and played around the ground with him, and bought him some things, and was so drunk coming home that he could not notice him coming home on the boat; that he was too drunk to notice him. The grandfather then hurried to the mother, who went to the river and then to Truslow's house and begged to see him, but was refused an audience by Truslow, who said his wife would not let him come out.

The evidence shows that on the day when the boy was enticed away, he had gone to his mother's to assist her about making a move; that Truslow filled the child's mind with excitement by vivid descriptions of the pleasures in anticipation, and promised his mother to take especial care of him, and carried him against his grandfather's wishes and without

his consent; that when Truslow, who was a creditor in the small amount named, found that the property in question had been set apart as a homestead to the appellant, and that the payment of his debt was thus postponed, that he became greatly enraged, and abused the appellant often and violently, and beat him severely; and often said that but for the boy the grandfather would have no family, and he would lose his right of homestead; and threatened on the day he beat the old grandfather to kill the child, applying to the unoffending obstacle to the fulfillment of his desire to collect his debt the vilest epithets; that he subsequently sought the mother, and offered money to her for the possession of the child. Failing in this, he got possession temporarily of the boy in the manner and with the result stated.

The child being thus disposed of, and the way believed to be clear, the bill was filed setting forth the setting apart of the homestead to the defendant, and the subsequent death of the only other member of his family besides himself, and praying for a sale of the homestead.

The defendant demurred to the bill, but the court overruled the demurrer, and he answered in the manner as detailed above. The cause was referred to a commissioner for examination and report, and depositions were taken; and the commissioner returned the depositions, and reported that in his opinion the defendant was not entitled to claim his homestead in the real estate in the bill mentioned, because he was *not a householder and head of a family.*

At the hearing the circuit court overruled all exceptions to the commissioner's report, confirmed the same in all respects, and decreed the sale of the homestead. From which decree the said appellant, Wilkinson, appealed to this court.

The only question we are called upon to decide is, whether this homestead exemption, which had, in due form of law, been set apart to this householder, was ended and determined by the death of his little grandson. To determine this ques-

tion, which is of first impression in this court, we will consider the question first in the light of the constitutional provision, which secures a homestead exemption to every householder or head of a family.

Section 1 of Article XI of the Constitution of Virginia provides that "every householder or head of a family shall be entitled," &c., to this homestead exemption. Section 5 provides that the general assembly shall prescribe the manner and on what conditions the said householder or head of a family shall set apart and hold for himself and family the homestead exemption, &c. But that this section shall not be construed as authorizing the general assembly to defeat or impair the benefit intended to be conferred by the provisions of this article.

And section 7 provides that "the provisions of this article shall be construed liberally, to the end that all the intents thereof may be fully and perfectly carried out."

We have said that this is a question whether the homestead, having been set apart in due course to a householder, is determined by the death of all the members of his family, except himself, and that it is, as such, of first impression in this court.

In the case of *Calhoun* v. *Williams*, 32 Gratt., 18, the question was, whether an unmarried man who had no family, was entitled to have the homestead set apart to him.

*Lindsay* v. *Murphy*, 76 Va., p. 428, was as to the right of a householder, who had removed from the State, to hold the property set apart as a homestead, and it was decided that the provision was intended to apply to and did apply only to citizens of this State.

In *Shipe, Cloud & Co.* v. *Repass*, 28 Gratt., 734, it was held that when a conveyance was set aside as fraudulent, the grantor could claim the homestead exemption as against creditors in the land, or in the proceeds of the sale thereof;

and so in *Boynton* v. *McNeal*, 31 Gratt , 459; *Marshall* v. *Sears*, 79 V. R., 4:); *Hatcher* v. *Crews*, 83 Va., 371.

In the case of *Kennerley* v. *Swartz & Son*, 83 Va., 704, it was held that when a judgment had become a lien on the land before the owner was entitled to a homestead, that such a lien was a security within the meaning of the 3rd section of Article XI of the Constitution, and was paramount to the claim of homestead subsequently made.

*Scott* v. *Cheatham*, 78 Va. R., 82, was concerning the waiver of the homestead, and the proper order in which liens should be satisfied when there was a waiver as to some creditors and not as to others.  See also *Strange* v. *Strange*, 76 Va., 240.

*Burke* v. *Jenkins*, 84 Va. R., 895, was a case where the husband, at his decease, left no debts, and the widow claimed, as against the heirs, to hold the whole estate as against them, under the homestead claimed by the husband in his lifetime, and this in a suit for partition.   It was held that as there were no debts, the exemption ceased altogether at the death of the husband, and the estate passed, by the statute of descents, to the heirs, subject to the widow's right of dower.   Citing *Helm* v. *Helm*, 30 Gratt., 40, in which it was held that the widow could only assert the claim of homestead against the creditors of the husband, and not against the heirs.

There are other decisions of this court on the subject, but none of them are upon precisely this question, and it is not necessary to further cite them.

The question here is, whether the homestead exemption provided by the constitution of the State, is intended, by that instrument, for the householder and his family, or exclusively for the family other than himself.

The 5th section of Article XI of the Constitution, mentioned above, provides that the general assembly shall, at its first session under this constitution, prescribe in what manner and upon what conditions the householder head of a family

shall thereafter set apart and hold, *for himself and family*, a homestead out of any property hereby exempted, and may, in its discretion, determine in what manner and upon what conditions he may thereafter hold, for *himself and family*, such personal property as he may have and coming within the exemption hereby made.

It is evident that the framers of that instrument intended that when a person was once entitled to be placed in the attitude of a householder or head of a family, and had his homestead exemption set apart for him, that it was so set apart for the benefit of himself as well as of his family other than himself. These are plain provisions; the householder or head of family is himself a part of the household—a part of the family. The exemption is, however, not only for the benefit of the family, but for his benefit also. Having been set apart for his benefit, and also for the benefit of his family, it would be an illiberal construction of this provision of the Constitution to hold that, if he survived the other members of his family, this provision would no longer shield him against his creditors, but cease and determine, and at the end of a long life, it may be devoted to his family, that he should be uncovered and exposed to the creditors and the debts which had been accumulating during the years that he had been devoting his life and this property to the maintenance of his family. This humane provision, which this court has so often declared to be a shield, would be thus forged into a sword suspended for a time over his head by a thread as slender as the tenure of life of a little child, whose life would be the sole barrier to the creditor whose interests it intercepted, and when this slender thread was cut by disease, or by an unscrupulous murderer, as it may have been in this case, a sword which, descending, would destroy and not protect.

If we are to construe this constitutional provision liberally, so that all the intents thereof may be fully and perfectly car-

ried out, we must not disregard the benefits provided for the householder, and consider only the benefits provided for the other members of his family.

It appears to us to be the just and proper construction of this provision to hold that, having once been established by law, it continues at least as long as the householder shall continue to live and occupy the domicile provided for the benefit of himself and his family. To hold otherwise would be to hold that the constitutional provision for his benefit was of no effect, but exclusively for the benefit of the other members of his family. We are not unmindful that this reasoning is not fully in accord with some of the views expressed in *Calhoun* v. *Williams, supra*—not such, however, as were necessary to the decision of the question at issue in that case; but, so far as that case is in opposition to the views herein, we cannot give it our sanction, and it is overruled. We have been referred to numerous decisions of other States, to some of which we will refer:

In Massachusetts a householder does not lose the right of homestead by the death of his wife and departure of his children, who have arrived at maturity, or by divorce, as he may adopt other persons as members of his family. *Silloway* v. *Brown*, 12 Allen, 34; *Doyle* v. *Coburn*, 6 Allen, 71; *Barry* v. *Leeds*, 51 N. H., 233; *Meyers* v. *Ford*, 22 Wis., 139; *Whalen* v. *Cadmus*, 11 Iowa, 226; *Parsons* v. *Livingston, Id.*, 104; *Stewart* v. *Brand*, 23 Iowa, 477.

Upon the question whether the homestead right had been, or could be, extinguished by the various acts of the parties holding that estate, Dewey, J., said, in *Doyle* v. *Coburn, supra*: " Nor did the separation of husband and wife, as shown by her withdrawal in 1861, taking with her the child, defeat the homestead estate. The defendant has personally occupied the same as his place of residence up to the present time. He acquired his homestead as a '*householder having a family.*' It is not necessarily lost by the death or absence of his wife and

children.    Others may be adopted as members of his household, and his homestead retain its existence."

And so say we in this case.    The householder had acquired this homestead as a head of a family; his son is absent at work; his little grandchild has died—it may be, criminally destroyed by a designing creditor.    He still occupies the homestead personally as his residence, and his homestead retains its existence.    This defendant's son, may return to the paternal roof, or others may be brought there, and his homestead will continue at least as long as it is his residence.

In the case of *Wood* v. *Wheeler*, 7 Texas, 13, it was held that the homestead once set apart to a householder and head of a family, the death of the wife without issue did not destroy the homestead right; it was still his homestead as long as it was his place of residence.    See also *Taylor* v. *Boulware*, 17 Texas, 77, and Smyth on Homestead, §§ 151, 152, 307, 317, and 334, and cases cited.

The late case of *Blose* v. *Bear*, *ante*, p. 177, was the case of a householder who had abandoned his residence upon the homestead, and in the State, and removed to another State, and is not in conflict with these views.

For the foregoing reasons, we are of opinion that the decree of the circuit court of Alexandria city, appealed from here, is erroneous, and the same must be reversed and annulled, and such decree rendered here as the said circuit court should have rendered, and the demurrer to bill sustained and the bill dismissed.        •

LEWIS, P., dissenting.

DECREE REVERSED.