## UNION TRUST CO. v. COX et al.

No. 6098.    Opinion Filed January 25, 1916.

(155 Pac. 206.)

1. HOMESTEAD—"Family." Two sisters living together, if the other requisites of the relation concur, will constitute a "family."

2. SAME—Survivor of Family—Right. The right of the survivor to continue to occupy the homestead after the constituent members of the family have been broken up, whether conferred by statute or interpolated by the courts, has never been extended further than to the surviving husband or wife and their minor children, unless conferred by statute.

3. SAME—Exemption—Right of Family—Termination. Where single persons resided together so as to constitute a legal family and a homestead was acquired and the family afterwards is broken up by death or other cause, the homestead right is thereby extinguished and terminated.

4. SAME—Exemption—"Family." To constitute a "family" there must be (1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support.

(Syllabus by Mathews, C.)

*Error · from District Court, Pawnee County;*
*L. M. Poe, Judge.*

Action by the Union Trust Company, a corporation, against Frances Cox and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Jno. Y. Murry, Jr.,* and *F. C. Shoemaker,* for plaintiff in error. ˋ

*Wm. Blake,* for defendants in error. ·

Opinion by MATHEWS, C. For convenience, the plaintiff in error will be designated as "plaintiff," and Frances Cox as "defendant."

On November 11, 1910, plaintiff, the Union Trust Company, obtained a judgment in the county court of Pawnee county against Misses Frances and Surena Cox for $617.34, and on the next day filed a transcript of the judgment in the office of the clerk of the district court of said county. The land sought to be sold by the plaintiff was taken up as a government homestead by defendant Frances Cox, and having made final proof, for some cause not disclosed by the record, she deeded the same to Surena Cox, on the 22d day of December, 1902. Frances and Surena Cox were sisters and lived together upon said land from the time of the filing until the death of Surena Cox, on the 24th day of April, 1911. On March 20, 1911, Surena Cox deeded the land back to her sister, the defendant Frances Cox. On June 2, 1913, the plaintiff caused an execution to be issued upon the aforesaid transcripted judgment and levied upon the land in controversy. On June 13, 1913, the defendant Frances Cox filed a motion in the district court of Pawnee county praying that the said execution which had been issued and levied on said land

be quashed, vacated, and set aside. She set up in her motion, in substance, that she became a settler upon the tract in controversy at the time of the opening of the Cherokee strip on September 16, 1893; that she had by reason of said occupancy obtained a patent therefor, and had ever since continuously resided thereon; and that her sister, Surena Cox, also had resided thereon with her until her death. She continued as follows:

"This defendant further shows and represents to the court that she is a maiden lady, about 55 years of age, and that she is now and has been, for some time, in poor health; that since the year 1906 there has resided with this defendant one Miss Dora McElhaney, who is the cousin of this defendant, and that said defendant herein and said Miss McElhaney are the parties and members which constitute the family of this defendant. Defendant further represents and shows to the court that, owing to the ill health and weakness of this defendant, she could not live alone upon said land, and that it is and was necessary that her cousin, Miss McElhaney, live and remain with her; that said Miss McElhaney has no means of support other than her physical labor; and that it is necessary for this defendant to maintain and support the said Miss McElhaney, as a member of her family. Defendant further shows to the court that said Dora McElhaney is the nearest living relation of this defendant; that the said Dora McElhaney is also a maiden lady of mature years, and that the said defendant herein, by reason of her residing with the defendant since 1906, has obligated herself to care for and protect the said Dora McElhaney, and has obligated herself, legally and morally, to her support and protection, and being the nearest blood relative of this defendant, and this defendant being obligated for her maintenance and support, and the said Dora McElhaney being the only blood relative to whom the said defendant therein may look for

assistance and protection, that she and the said Dora McElhaney constitute a family and is the family of this defendant; and that by reason of all of the aforesaid facts the said defendant herein claims the above-described land as her home and homestead, under the laws of the State of Oklahoma."

She concluded by asking that plaintiff and the officials be restrained from making the sale, and that the land be declared to be her homestead.

The defendant first obtained a temporary injunction, and at the final hearing the court made the injunction permanent, and the plaintiff prosecutes this appeal, assigning as error the sufficiency of the evidence to warrant the relief granted by the judgment.

The question presented is: Was the land levied on under the execution issued on the 2d day of June, 1913, subject to the judgment lien in favor of the plaintiff, or was the same exempt from the operation thereof under the provisions of the Oklahoma homestead and exemption laws?

In the briefs filed herein there is discussed the homestead status of the land in controversy, (1) during the time it was occupied by Frances and Surena Cox together, (2) after the death of Surena Cox, while it was being occupied by Frances Cox alone, and (3) while it was occupied by Frances Cox and Miss McElhaney. Defendant, in her brief, argues that, as the land during the life of Surena Cox had been impressed with a homestead status, they constituting a family, Frances Cox, as the survivor, had the legal right to continue to occupy said land as a homestead, after the death of the said Surena Cox. In the lower court, the case was not tried upon the theory that Surena Cox was a member of de-

fendant's family, and such a theory, even if the facts supported it, cannot be raised here for the first time; but, as we view the case, it becomes immaterial whether or not these two sisters residing together on the land come within the legal definition of a family so as to impress the land with a homestead nature.

We will observe here that two sisters residing together, if the other requisites of the relation concur, will constitute a "family" under the legal acceptance of the word; but we do express a great doubt that the evidence in this case shows the existence of a family even while they were residing together. The evidence introduced as to them showed only that they lived together about 20 years, and nothing more. This was not sufficient to constitute a legal family, as we will show further on in this opinion. But presuming that this question is properly presented here, and that while the two sisters resided together they constituted a legal family and did impress the land in controversy with a homestead status, yet we are of the opinion that upon the death of Surena Cox on April 24, 1911, the land was divested of such homestead status. We know it is practically universally held throughout the Union, by the courts of all the various states, as set out in *Holmes v. Holmes*, 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920, that when a homestead has once been acquired a continuation of the homestead does not depend upon a continuation of the family and is not destroyed by a breaking up of the family, but the survivor has the right to continue to enjoy this particular homestead. The statutes of some states expressly give this right to the survivor, and the courts of other states, in the absence of such a statute, have "read the law" into thir decisions.

But the right of the survivor to continue to occupy the homestead after the constituent membership of the family has been broken up, whether conferred by statute or interpolated by the courts, as far as our research has led us, has never been extended further than to the surviving husband or wife and their minor children, unless conferred by statute.

The California case of *Roth v. Insley,* 86 Cal. 134, 24 Pac. 853, prasents an instance wherein it was held that where a son, during the time his mother resided with him, had a homestead set apart as provided by a statute of that state, the same could not be subjected to his debts after her death. But this decision was based upon a statute which expressly stated that such a homestead should not be held liable for the debts of the owner.

In the case of *Baldwin v. Thomas,* 71 Ark. 206, 72 S. W. 53, a son acquired a homestead while his father, mother, and sister, whom he supported, lived with him. All of them having died, and the land having been seized under execution, the court held the same exempt under a statute which provides that when the association of persons which constitute the family is broken up, whether by separation or death, the right of homestead continues in the former head of the family.

The case of *Wilkerson v. Merrill,* 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632, presents an instance where a man had residing with him his adult son, who worked out on his own account, but received occasional aid as needed from his father, and a small grandson, and under the law of that state had set apart to him as a homestead the property upon which they resided. The court held that the death of the grandson did not end and deter-

mine said homestead exemption, but the decision is based upon the Constitution of the state, which says that the benefit of the homestead law shall not be defeated or impaired.

In the case of *Fullerton v. Sherrill*, 114 Iowa, 511, 87 N. W. 419, approved in the case of *Blair v. Fritz*, 162 Iowa, 716, 144 N. W. 611, is a well-considered opinion from a state, as is the case with our state, which has no statute on the proposition under discussion. In that case a widow, after the death of her husband, purchased a residence, which she occupied with her two daughters until their marriage. After their marriage she occupied one room of the residence and rented the balance to tenants with whom she boarded. A judgment having been obtained against her, she sought to defeat an execution issued thereon against this property by a claim of homestead exemption. It was conceded that she had acquired a homestead right in the premises through occupancy with her daughters, but it was held that the homestead exemption extended to the family only, and that an individual did not come within the definition of a family, which was defined to be "a collective body of persons who live in one house, and under one head or manager." We take the following from this case:

"Her situation is precisely like that of any other single person, who, as the head of a family, has acquired a homestead, and thereafter has involuntarily ceased to be a component part of such family. If she had children to support, so do those never married often have persons dependent on them for care and maintenance. If she may continue to enjoy the exemption after the departure of her children, there is no good reason for denying that privilege to any person, though alone and never married, who continues in occupancy of the homestead after aban-

doned by those dependent on him. The acquisition of a homestead necessarily depends on the existence of a family. Does a continuation of that right depend on the continuation of the family relation? Or, stating the question more precisely, will an unmarried person lose the homestead right, previously acquired, by the departure of those constituting his family, without any other change in his situation? It seems to us the statute quoted in stating under what circumstances and the particuar person who may continue to claim the exemption excludes all others. Moreover, the primary object of the exemption is the protection of the family, and when that ceases the reason for the exemption ceases with it. The individual is not entitled to the privilege before becoming a part of the family. Why should it be extended to him after he ceases to be such? The denial of it in the one case has precisely the same ground to rest on as in the other. While the family relation existed, the law extended the exemption for its protection. When that ceased, the necessity for its protection ceased with it. 'When an individual ceases to have the cares of a family, the law will not protect him as if he had.' It will treat him like others, looking not to the past or future, but at his present status. *Revalk v. Kraemer*, 8 Cal. 66, 68 Am. Dec. 304; *Bank v. Cooper*, 56 Cal. 339; *Johnson v. Little*, 90 Ga. 781, 17 S. E. 295; *Cooper v. Cooper*, 24 Ohio St. 488; *Galligar v. Payne*, 34 La. Ann. 1057. See *Calhoun v. Williams*, 32 Grat. (73 Va.) 18, 34 Am. Rep. 759, and *Wilkinson v. Merrill*, 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632; *Hill v. Franklin*, 54 Miss. 632."

In this state we have a statute (section 6328, Rev. Laws 1910) extending the right to the husband or wife to continue to possess and occupy the homestead, acquired during the life of both, after the death of the other, and this right is also extended to the children, after the death of both parents, until the youngest becomes of age; but we have no statute giving this right to the survivor of a fam-

ily other than a family based upon marriage relations. It might be well argued that this beneficent provision ought to extend to just such an instance as is presented in the case at bar, but that is a matter within the province of the legislative branch of the government. We thus conclude that, at least, after the death of her sister, the defendant was divested of her homestead right, if she ever had one.

The defendant contends that when her cousin, Miss McElhaney, took up her residence with defendant on the premises in controversy, they thus constituted a family, and that the land thereby became exempt to them as a homestead as such. Section 2, art. 12, of the Constitution, in part, is as folows:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon. * * *"

Section 3342, Rev. Laws 1910, in part, is as follows:

"The following property shall be reserved to the nead of every family residing in the state exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: First. The homestead of the family, which shall consist of the home of the family, whether the title to the same shall be lodged in or owned by the husband or wife. * * *"

Many states have a statute defining the term "family," but we have no such statute defining the term or indicating any of its necessary ingredients.

In the case of *Sheehy v. Scott*, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 365, we find a complete and

exhaustive note on the question of what constitutes a family, and we take the following excerpt therefrom:

"In *Roco v. Green,* 50 Tex. 488, the court says: 'We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists: (1) It is one of social status, not of mere contract; (2) legal or moral obligation on the head to support the other members; (3) corresponding state of dependence on the part of the other members for this support.' The family, within the meaning of the homestead law, consists of those members of the household who are dependent upon the householder for support, or to whom the householder owes some duty.—*Brokaw v. Ogle,* 170 Ill. 115, 48 N. E. 394. To constitute such (single men) a family, there must be a condition of dependence, and no mere aggregation of individuals will create this relation. * * * *Abercrombie v. Alderson,* 9 Ala. 981."

Our own court, in the case of *Rolator v. King,* 13 Okla. 37, 73 Pac. 291, approved of the definition of the term "family" as laid down in the case of *Roco v. Green, supra,* and also used this language:

"As to what constitutes the head of a family under the exemption laws, the authorities seem to be conflicting; but the great weight of modern authorities, we think, hold that, in order to constitute the head of a family within the purview of the exemption laws, there must be at least a condition of dependence on the part of the other members upon the head, and a legal or moral obligation on the part of the head to support them, and that a mere collection of individuals does not satisfy the requirements of the statute."

In order to constitute a family, there must be a collection of persons living together. One person cannot constitute a family, nor the head of a family. In order to constitute "the head of a family," he who claims a

homestead as exempt on that ground must be able to show that there are more than himself, who together form the family, and who are legally dependent upon him, and whom he is legally obliged to care for. *Betts et al. v. Mills.* 8 Okla. 351. 58 Pac. 957.

All the individuals who live collectively under the authority of another constitute a family. Bouvier, vol. 2, p. 1186.

Under the exemption laws a homestead can only be reserved to a family. Homesteads are most frequently secured to the head of a "family." What constitutes the relationship will vary according to circumstances. It generally embraces a collective body of persons, consisting of parents or children, or other relatives, domestics, or servants, residing together in one house or upon the same premises. But, in any event, a person, to be a member of a family, must be a member in good faith. The family may be composed of a brother and sister, a husband and wife, a father or grandfather and his children or grandchildren, a son and his mother and sister, a father-in-law and his dependent daughter-in-law, an unmarried man and his illegitimate offspring, an unmarried woman and her adopted child, a husband and his children, deserted by the wife and mother, a widower and his adopted daughter and her husband, a divorced man living with his minor unmarried son, a son living with his widowed mother and supporting her, a widow living with and supporting the children of her deceased husband by a former wife. On the contrary, a "family" does not consist of but one person, nor of a man and a woman unlawfully married, nor of persons lawfully residing together, but without being related or in any wise connected. 21 Cyc. 466.

.It is to be borne in mind that in order to constitute a family there must be (1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support.

From the abstract definition of the term "family," it seems that it is comprehensive enough to embrace cousins residing together and coming within the other requisites of the term; but a most exhaustive research has failed to disclose a single adjudicated case where the family was composed of cousins. In Bouvier, *supra,* 21 Cyc., *supra,* 4 L. R. A. (N. S.), *supra,* and 25 Cent. Digest, and other places, we find collated a large number of adjudicated cases giving examples of those who go to comprise a family; but none seem to have carried the relationship far enough to reach cousins. The reason the rule has stopped short of embracing cousins is plainly apparent. The general rule is, all the property of a debtor is applicable to the payment of his debts. The effect of the exemption laws is to create exceptions to this rule, and permit a debtor to retain in his possession property which, following the general rule, should be applied to the payment of his debts. The law permitting this says that, while it is the honorable duty of all persons to pay their just debts, yet under certain conditions a higher duty may rest upon them, and that is to maintain and support those dependent upon them. Some jurisdictions limit this rule to those who are legally dependent upon them, but it seems that this limitation is too circumscribed, and the

weight of authority seems to place the limitation at those who are morally dependent upon them for support.

We find no adjudicated case holding that the duty to support and maintain a cousin is greater than the duty to pay one's debts, and we believe the better reasoning supports the proposition that a debtor has no moral or legal right to appropriate assets that should be applied to the payment of one's debts and expend the same in providing a home for so distant a relative as a cousin. Thompson on Homestead and Exemptions, sec. 45.

Not only are we of the opinion that the defendant was bound both morally and legally to pay her debts, rather than maintain a home for Miss McElhaney, but the evidence falls short of proving any state of even partial dependency of Miss McElhaney upon the charity of the defendant. It developed in the evidence that Miss McElhaney owned about 70 acres of land for which she had recently refused $2,000, and that she had been offered $5 per acre for an oil lease thereon, which she also refused. A party owning property of that value in their own right cannot be said to be dependent in any sense of the word. Besides, the evidence shows that Miss McElhaney had three brothers living in Oklahoma; but their ability to assist her, should she have needed the same, was not disclosed by the evidence. The evidence also shows that the land sought to be exempted by defendant is worth $5,000.

The facts in this case show that the defendant at the time of the trial was a maiden lady, 56 years old, and in poor health, and the occasion of Miss McElhaney residing with her is aptly told in her own language as follows:

"Q. I will ask you to state whether or not you and Miss McElhaney, your cousin, constitute the family? A. Yes. Q. And do you and your cousin live together? A. Yes. Q. What is the reason, Miss Cox, that Miss McElhaney lives with you? A. I was sick, and I was not able to live alone, and she did not have any other home, and it would be nice for her to live with me, for her and me too. * * * Q. This Miss McElhaney that lives with you, is she the only relative you can get to live with you? A. She is the only one I have got to live with me. Q. Now state to the court, Miss Cox, whether or not you and Miss McElhaney, who you have testified constitute your family, obtain your living and support from the proceeds of this farm, or otherwise. A. Yes, she lives with me, and we live on what we get on that farm and what we can do. * * * Q. Miss Cox, what condition are you in with reference to your health? How is your health? A. It is just bad."

This evidence shows that these two maiden ladies are residing together so as to be of mutual assistance to each other and as companions, and the defendant seems to be more dependent upon Miss McElhaney than *vice versa*. The evidence does not disclose that defendant furnished the food they ate, or that she provided raiment for Miss McElhaney, or anything else, except she testified that she got medicine for her.

We recommend that the judgment of the lower court be reversed, and this cause remanded, with instructions to the trial court to enter an order denying the defendant's motion to vacate and quash the execution issued and levied on the land in controversy.

By the Court: It is so ordered.