## GREENSHAW v. BROWN.

No. 12087—Opinion Filed Oct. 23, 1923.

(Syllabus.)

### Homestead—Exemption for "Family" and "Survivors."

Although under the provisions of the Constitution and statutes of Oklahoma, the homestead of the family is exempt from attachment, the right to exemption cannot originate without the existence of a family—of a household consisting of more than one person—yet, when the homestead character has once attached, it may persist for the benefit of a single individual who is the sole surviving member of the family. The exemption, however, does not extend any further than to the immediate members of the family; in other words, it does not extend further than to the surviving husband or wife and their minor children.

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Action by J. J. Greenshaw against L. Brown. From the action of the trial court in sustaining the motion of defendant to dissolve an attachment, the plaintiff appeals. Affirmed.

Geo. L. Zink, for plaintiff in error.

Rummons & Hughes, for defendant in error.

MASON, J. This action was commenced by the plaintiff in error, J. J. Greenshaw, as plaintiff, against the defendant in error, L. Brown, in the district court of Kiowa county, to recover damages for as-

sault alleged to have been made by the defendant with a double-barreled shotgun upon the plaintiff. In aid of suit, an attachment was sued out and levied upon real estate belonging to the defendant, upon the grounds that the damages for which the action was brought were for injuries arising from the commission of a felony, or a misdemeanor. The defendant filed a motion to dissolve the attachment upon the ground that said property attached was the homestead of the defendant, and, under the law, was exempt from execution or attachment. Said motion to discharge the attachment was heard upon the following stipulation of facts:

"It is stipulated and agreed by and between counsel for the parties on motion to dissolve attachment herein, on the ground that the real estate attached is the homestead of the defendant, L. Brown, that the tract of land seized in the attachment, as to title thereof, was vested in L. Brown by patent from the United States government, he having originally filed upon the land, and proved it under the federal homestead law; that at the time that he filed upon the land he was a married man, having a family; that the real estate seized in the attachment—that the defendant and his family resided upon the real estate seized in the attachment, and that the wife of the defendant, L. Brown, died some five or six years ago; that since the death of his said wife the defendant has resided upon the land in controversy, but that he alone has resided upon the land, and that his children who formerly constituted his family, or a part of his family, are all of age and all maintain homes of their own and do not live with the defendant, L. Brown; and that said L. Brown has at all times claimed the land as his homestead, and that he has no other homestead or place of residence, and has not had since the entry of this land."

The court sustained said motion, for the reason that said lands constituted the homestead of the defendant, and dissolved the attachment, to which action of the court the plaintiff excepted. Motion for new trial was filed on the same day and overruled by the court, to which action of the court the plaintiff excepted, and has duly perfected his appeal to this court.

For reversal, the plaintiff in error assigns three specifications of error, all of which are presented under the single proposition of whether or not the land seized under the attachment in this case was exempt from seizure under the homestead law of the state of Oklahoma. In other words, the sole question presented for our consideration is, "Does the right to claim

as exempt from attachment or execution a tract of land as a homestead, where the title is in the debtor, depend on the existence of a family?" If so, the contention of the plaintiff is well taken and the action of the trial court should be reversed. In support of this contention, counsel for plaintiff in error cites sections 1 and 2, article 12, of the Constitution of Oklahoma, as follows:

"Section 1. The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty (160) acres of land, which may be in one or more parcels, to be selected by the owner. * * *

"Section 2. The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon. * * *"

The remaining portion of this section of the Constitution prohibits the owner, if married, from selling the homestead without the consent of his or her spouse, given in a manner as prescribed by law, and contains a proviso that nothing under article 12 shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein, nor prevent a sale thereof on foreclosure to satisfy any such mortgage.

He then cites section 6595 of the Comp. Okla. Stat. 1921:

"The following property shall be reserved to the head of every family residing in the estate exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: First: The homestead of the family, which shall consist of the home of the family, whether the title to the same shall be lodged in or owned by the husband or wife."

The remainder of the section describes other property that is so reserved exempt. He then cites section 6597, Comp. Stat. 1921, which is, in fact, a reiteration of section 1, art. 12, of the Constitution.

Counsel for plaintiff in error then cites Betts et al. v. Mills, 8 Okla. 351, 58 Pac. 957, wherein this court held as follows:

"The declaration of section 1300 of the Statutes of 1893, concerning the 'administration of estates of decedents' by the probate court, that 'Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law,' does not support the contention that any single survivor of the family may be entitled to the possession of the proper-

ty as a homestead, unless such survivor is 'the head of a family.'"

In this case the facts were very similar to those in the instant case, and it is contended that the rule therein announced, as applied to similar facts, should be followed and readopted, although it is admitted that Betts v. Mills, supra, is overruled by the case of Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220, wherein the court held as follows:

"When a husband dies seized in fee of land occupied and used by himself and family as a homestead, his surviving wife, although without children, is entitled, by reason of section 1607, Wilson's Rev. & Ann. St. 1903, as against his heirs, to occupy and possess the whole of such homestead as long as she preserves its homestead character by maintaining a home thereon.

"Where a wife occupies as a home the homestead set apart by order of the probate court from the estate of her deceased husband for the use of herself as a home, the same is not liable to partition at a suit of the heirs of the deceased husband."

There was no question as to the right of creditor involved in this case; the only question was the right of the brothers, who were the heirs at law of Edwin M. Holmes, deceased, to enforce partition as against the wife, who possessed the lands as a homestead under section 1607, Wilson's Rev. & Ann. St., which is substantially the same as section 1224, Comp. Stat. 1921, which reads as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. And in addition thereto, the following property must be immediately delivered by the executor or administrator to such surviving wife or husband, and child or children, and is not to be deemed assets, namely: * * *"

It is further contended that the family relation is essential to the claim of exemption of a tract of land as a homestead, but that the family relation is not essential in order to authorize the surviving husband or wife to occupy the homestead set apart in an administration proceeding as against other heirs or their assigns having interest in the property.

While the principles of law involved in the case of Holmes v. Holmes, supra, and the instant case are so similar that the

opinion in the Holmes Case should at least be persuasive in this opinion, yet the facts are so different that we cannot say it controls. Counsel for plaintiff in error contends that the case of Holmes v. Holmes, supra, was based very largely on section 1607, Wilson's Rev. & Ann. St., and that said section (sec. 1224, Comp. Okla. Stat. 1921) is not applicable to the case at bar. He then insists that we 'pass squarely on the question of whether or not, after the homestead has once vested in the debtor, it ceases to be exempt by the death of his wife and the marriage of his children, leaving him alone in the occupancy of the property.

The question is one upon which the decisions of the courts of the various states are in sharp conflict, and while we find many well-written and well-considered opinions which support the plaintiff's contention, the weight of authority is in favor of the continuance of the homestead right to the surviving owner, who is no longer head of a family.

In the case of Palmer v. Sawyer (Neb.) 103 N. W. 1088, the state of the law as exhibited by the adjudicated cases is well presented in these words:

"Turning now to the decisions of the courts of last resort in other states on statutes of somewhat similar construction to our own, we find an irreconcilable conflict in the various conclusions reached. This conflict in some instances is traceable to the different provisions of the statutes construed, and in other instances to the conception taken by the court of the intention of the Legislature in the enactment of the statute. Those courts which look upon the statutes as a statute of nurture, intended solely for the protection of the dependent members of the family from the improvidence of the head of the family, without any division, arrive at the conclusion that when the homestead has been selected, and the dependent members of the family for whose benefit it was created have ceased to occupy, the protection of the homestead ceases, because the reason for the protection has ceased. The leading cases supporting this theory of construction are Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304; Bank v. Cooper, 56 Cal. 339; Johnson v. Little, 90 Ga. 781, 17 S. E. 294; Cooper v. Cooper, 24 Ohio St. 488; Galligar v. Payne, 34 La. Ann. 1057; Hill v. Franklin, 54 Miss. 632; Fullerton v. Sherrill, 114 Iowa, 511, 87 N. W. 419. In opposition to this view is another line of decisions based on the hypothesis that the intention of the Legislature in enacting the various homestead statutes was to protect the home and all its inmates from any business misfortune and financial adversity that might be-

fall them; that the protection extends to the head of the family as well as to the dependent members. This theory leads to the conclusion that when a homestead has been selected by the head of a family he becomes invested with a right or estate in such homestead, which cannot be defeated by the death or abandonment of the home by other members of the family who occupied it at the time of its selection. The following are some of the leading cases supporting this view: Silloway v. Brown, 12 Allen (Mass.) 30; Kinbrel v. Willis, 97 Ill. 494; Stanley v. Snyder, 43 Ark. 429; Beckmann v. Meyer, 75 Mo. 333; Webb v. Cowley, 5 Lea (Tenn.) 722; Blum v. Gaines, 57 Tex. 119; Stults v. Sale, 92 Ky. 5, 17 S. W. 148, 13 L. R. A. 743, 36 Am. St. 575."

And the following decisions from other states may be added to the list: Pardo v. Bittorf, 48 Mich. 275, 12 N. W. 164; Barney v. Leeds, 51 N. H. 253; Wilkinson v. Merrill, 87 Va. 513, 12 S. E. 1015, 11 L. R. A. 632, overruling Calhoun v. Williams, 32 Grat. 18, 34 Am. Rep. 759; Town v. Rumsey, 5 Wyo. 11, 35 Pac. 1025; Rollings v. Evans, 23 S. C. 316; Taylor v. Boulware, 17 Tex. 74, 67 Am. Dec. 642.

It would be impracticable to attempt to review in detail the cases cited, or to discuss how far they are affected by differences in local statutes. Of course, there is much diversity in the legislation of the different states, but the same general policy runs through all of it. Not only do the majority of the cases we have examined favor the exemption, but it is also supported by the cases containing the better reasoning, which is illustrated by the following extracts from typical cases:

"Although a homestead estate cannot be acquired except by a householder having a family, yet when once acquired, and still occupied by him, it has been held not to be defeated or lost by the death or absence of his wife and children. Doyle v. Coburn, 6 Allen (Mass.) 73. Any other construction would render a husband who had been deprived of his family by accident or disease, or by their desertion, without any fault of his, liable to be instantly turned out of his homestead by his creditors." Silloway v. Brown, 12 Allen (Mass.) 30.

"Upon all these considerations we are inclined to the opinion that the tenant has not lost his right of homestead by the death of his wife and the dispersion of his children; that he is still entitled to the shelter of a home, exempt from the claims of creditors; that there is nothing in the act (to adopt the language of the tenant's counsel) which requires the harsh interpretation that he shall lose his homestead merely because of the death of his wife, which was the act of God, and which the tenant could not prevent. We may conceive the cause of a poor debtor, entitled to, acquir-

ing, and enjoying a homestead during all the years of a long and laborious life. His children have grown to man's estate, and have all departed from the paternal roof, it may be to distant lands, where they have established their own homes and surrounded themselves with their own families, it may be that they have all died. .At last the wife dies, and the father is left alone in the dwelling which he has always called his home, and which is endeared to him by fondest associations and by sacred memories. He is too old and feeble to acquire another. Shall he be turned out of the old homestead because of the inevitable fate which has deprived him of his wife? Or we may take the case of the young man who by habits of industry and frugality has acquired just enough property to purchase a shelter for himself and the young wife who is to share it with him. No child is born to them, and in a few weeks, or months it may be, the wife dies, and the young man is no longer, in strict construction, the head of the family. Shall he, too, therefore, be deprived of his homestead, and so, perhaps, of the opportunity of marrying again and adopting other members of his household? Such a construction is not required by the terms of the act. Such a construction would be strict, exclusive, harsh, unjust, illiberal, and subversive of the 'humane policy of the law.'" Barney v Leeds, 51 N. H. 252-277.

"The appeal raises this question: The existence of a family being necessary to the acquisition of a homestead, does a continuation of the right depend on a continuation of the family relation? The decided weight of authority is that a homestead estate, when once acquired and still occupied by the owner, is not defeated or lost by the death of his wife or the arrival of his children at years of maturity. * * *" Stanley v. Snyder, 43 Ark. 429.

"There is something repugnant in the proposition, that, to the sorrow of losing his family, should be added the misfortune that his home should be taken from him by forced sale; and that, too, for a debt for the payment of which it was not believed, either by himself or the creditor, at the time of its creation, that the homestead would be liable, and for the security of which it did not enter as an element of credit." Blum v. Gaines, 57 Tex. 119.

"It seems to be settled, on general principles, that a homestead once acquired by the head of a family will not be defeated or lost by the death or absence of his wife and children, if he continue to occupy it. Any other construction would render a husband who has been deprived of his family by accident or disease, or by their desertion without any fault of his, liable to be instantly turned out of his homestead by his creditors." Beckmann v. Meyer, 75 Mo. 333.

The statutes, the construing of which gave rise to these expressions, however much they may otherwise differ from the homestead provision or our Constitution, manifestly have this in common with it—that they do not in terms declare that the homestead exemption shall survive the dissolution of the family. The same considerations that impelled the court in each of these cases cited to read such declaration into the law are operative here. The substance of the arguments by which such interpretation has been justified is applicable here. In fact, many of the decisions above cited are based upon the provisions of the Constitution or statutes which make the homestead exempt to the head of a family, while under the provisions of our Constitution the homestead is made exempt to the family.

We think that our Constitution and statutes, construed together, and so as to render both effective, bestow the homestead right to the family and each member thereof, and although the right of the exemption cannot originate without the existence of a family—that is, a household consisting of more than one person—yet, where once the right is acquired by the family, and is maintained and occupied by either the owner or his or her family, the right continues. In other words, the homestead exemption can only be divested by the voluntary act of the head of the family joined by his wife or by abandonment or by direct renunciation of the right.

We are of the opinion that it must have been the intention of our lawmakers, and we therefore conclude that, when the homestead character has once attached, and the head of the family or any other surviving member of the family remains in continuous occupancy of the property, doing nothing on his part, and suffering nothing within his control to be done, that might affect his relation to it, in a sense it is still occupied as a residence by the family, although there may be no dependent members of the family to protect or who are in need of the shelter and sanctuary of the home. It is occupied as a residence by a constituent part of the family, and by all the family that survives.

However, under the holding of this court in the case of Union Trust Co. v. Cox, 55 Okla. 68, 155 Pac. 206, the right of the survivor to continue to occupy the homestead after the constituent members of the family have been broken up, does not extend further than to the surviving husband or wife and their minor children.

We therefore conclude that the trial court properly sustained the motion of defendant to dissolve the attachment. The judgment of the trial court is affirmed.

JOHNSON, C. J., McNEILL, V. C. J., and KANE, NICHOLSON, and COCHRAN, JJ., concur.