[Civil No. 3714.   Filed September 21, 1936.]

[60 Pac. (2d) 933.]

ETHYL C. LOBBAN, as Executrix of the Estate of Leora Lobban Brewer, Deceased, Appellant, v. VANDER VRIES REALTY & MORTGAGE COMPANY, a Corporation, Appellee.

Messrs. Franklin & Whitson, for Appellant.

Messrs. Darnell, Pattee & Robertson, for Appellee.

LOCKWOOD, C. J.—This is an appeal by Ethyl C. Lobban, as executrix of the estate of Leora Lobban Brewer, hereinafter called defendant, from a judgment rendered against her decedent, and in favor of Vander Vries Realty & Mortgage Company, a corporation, hereinafter called plaintiff.

The material facts of the case are not in dispute, the only question for our consideration being whether or not there is to be drawn from these facts the conclusion of law that on the 26th day of January, 1933, decedent was, within the meaning of section 1731, Revised Code of 1928, "the head of a family, and whose family resides within this state." The facts may be stated briefly as follows: In the year 1927, decedent was a widow who owned several parcels of real estate near Tucson, Arizona. On one of these, a part of which constitutes the subject-matter of this controversy, she maintained her home. In 1927, her sister Ethyl Lobban, an adult some thirteen years younger than decedent, came from the east to make her home with the latter. From that date until January 12, 1933, the two parties lived together at the home of decedent. For about a year Ethyl Lobban was unable to work, by reason of illness, and was supported by contributions from various members of her family, including decedent, but in the latter part of 1928 she began to earn a living, and has done so either wholly or in part continuously ever since, part of the time as clerk in a furniture company and part of the time by the teaching of music. From 1928 to 1931 her income was ample for her own support and she did so support herself, with the exception that she paid no rent for her use of her sister's home. In 1931, 1932 and 1933 her income dwindled until during these years it reached a minimum of approximately $40 per month. From these earnings she paid no

rent to her sister, but did so far as living expenses, such as groceries, fuel, water, telephone, etc., operate together with the latter upon what she herself characterized as a "50–50 basis," paying her personal expenses in addition from her own private income. She and the decedent together purchased certain real estate near Tucson, and paid thereon approximately $600, this also being on a 50–50 basis. Part of the time she carried a separate checking and savings account in her own name, and part of the time a joint checking account with her sister. Her movements and the manner of conducting her affairs were in no way controlled nor directed by her sister, except to the extent that she was not permitted to smoke, drink, nor play cards in their home. On the 26th of January, 1933, the plaintiff was in the process of foreclosing a mortgage upon certain property of decedent not involved in this action, and the latter, apparently being of the opinion that the mortgaged property would not pay the judgment which was about to be rendered against her and desiring, as she said, to protect the property involved herein from a deficiency judgment, made a declaration of homestead as the head of a family, under section 1731, *supra,* her contention being that the family, of which she was the head, consisted of her sister Ethyl Lobban and herself. Judgment having been rendered in the foreclosure suit, and there being a deficiency judgment still outstanding, the plaintiff herein purchased at an execution sale a certain portion of the property covered by the homestead declaration, and being that involved in the present action, and thereafter brought suit to quiet its title to the property so purchased. Decedent defended on the ground that the property which had been sold to plaintiff and which was the subject-matter of the action, was a part of her home-

stead as above set forth, and, therefore, not subject to execution. Judgment was rendered in the trial court in favor of plaintiff, quieting its title to the property purchased under execution as aforesaid, and the case was brought before us on appeal.

The sole question for our consideration is whether, as a matter of law, upon the facts as above stated, the decedent was the head of a family, and, therefore, entitled to make a valid declaration of homestead covering the property in question. It is admitted that if she was such a head, judgment should have been rendered in favor of decedent. If she was not, the trial court properly rendered judgment in favor of plaintiff. The trial court made special findings of fact and conclusions of law, the only ones of which are material on the present appeal being as follows:

"That said Ethyl Lobban is not dependent upon said defendant, but to the contrary, defrays her own living expenses and pays an equal proportion of the expenses incident to the operation of said dwelling, wherein she resides with said defendant. That said Ethyl Lobban is engaged in a remunerative professional venture of her own from which she received Thirty-eight ($38.00) to Forty ($40.00) Dollars per month net during the year 1933–1934. That she is and was on the 26th day of January, 1933, being the date of the filing of said claim of homestead exemption, the owner of other personal assets in the form of bank deposits, an automobile, insurance, etc., in her own name and right. That she is not subject to the control or regulation of her older sister, the said defendant herein, except she observes certain house rules laid down by the older sister with reference to smoking, drinking and playing cards. That said defendant is under no moral or legal obligation to support said party."

"As Conclusions of Law, the court finds: (1) That the defendant Leora Lobban Brewer is not, and was not on the 26th day of January, 1933, the head of a family, and was, therefore, not entitled to a claim of

homestead exemption upon the property referred to in plaintiff's complaint, and upon which quieting of title is sought. That the claim of homestead exemption filed by said defendant and recorded in the office of the County Recorder of Pima County, Arizona, in Book 2 of Homesteads at page 18 thereof, was and is void and of no effect. . . . ''

The question of what constitutes the head of a family in the purview of the various exemption laws has frequently been before the courts, and many attempts have been made to determine when a "family," within the meaning of these laws, exists. We think the case which, after a careful consideration of all the preceding cases, reaches the most logical conclusion is that of *Union Trust Co.* v. *Cox,* 55 Okl. 68, 155 Pac. 206, 209, L. R. A. 1917C 356. Therein the court says as follows:

"Under the exemption laws a homestead can only be reserved to a family. Homesteads are most frequently secured to the head of a 'family.' What constitutes the relationship will vary according to circumstances. It generally embraces a collective body of persons, consisting of parents or children, or other relatives, domestics, or servants, residing together in one house or upon the same premises. But in any event a person to be a member of a family must be a member in good faith. The family may be composed of a brother and sister, a husband and wife, a father or grandfather and his children or grandchildren, a son and his mother and sister, a father-in-law and his dependent daughter-in-law, an unmarried man and his illegitimate offspring, an unmarried woman and her adopted child, a husband and his children, deserted by the wife and mother, a widower and his adopted daughter and her husband, a divorced man living with his minor unmarried son, a son living with his widowed mother and supporting her, a widow living with and supporting the children of her deceased husband by a former wife. On the contrary, a 'family' does not consist of but one person, nor of a man and a woman unlawfully married, nor of persons law-

fully residing together, but without being related or in any wise connected. 21 Cyc. 466.

"Bearing in mind that in order to constitute a family there must be (1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support."

We accept the four elements therein set forth as necessary, under the law of Arizona, to constitute a family within the meaning of our homestead statute. Nor does either party to this action seriously question this as being correct. The real difficulty is in the application of the rule to the facts above set forth. We think that the Supreme Court of Oklahoma, in the case just cited, has given us some aid by discussing the reason for exemption laws. This reason is stated in the following language:

"The general rule is all the property of a debtor is applicable to the payment of his debts. The effect of the exemption laws is to create exceptions to this rule, and permit a debtor to retain into his possession property which, following the general rule, should be applied to the payment of his debts. The law permitting this says that, while it is the honorable duty of all persons to pay their just debts, yet under certain conditions a higher duty may rest upon them, and that is to maintain and support those dependent upon them."

Applying these provisions to the facts of the present case, to what conclusion do they point? Did there exist a social status consisting of a head who had a right to direct and control the members of that status, and obligated legally or morally to support such members, and was there a corresponding state of at least partial dependence of the other member

of the status on the head for support, to the extent that there was a higher duty upon decedent to give her sister free rent—this being apparently all that she did furnish for her support—than to pay her just debt to plaintiff. That no legal obligation of support existed is plain. A sister does not have any legal obligation to support even one of that kindred who is not able to support herself. The obligation, if any, is purely a moral one. That under some circumstances such a moral obligation does exist is unquestioned. If one is unable to secure the necessities of life from any other source, there is a well-recognized social (although not legal) rule that, lacking a closer kin, a brother or sister who is able to furnish the support should give it. On the other hand, if the alleged dependent is able from her own income, property, or efforts to provide the necessities of life, the fact that she cannot also furnish herself with the comforts or luxuries does not create a moral obligation on the part even of a wealthy sister to furnish such comforts or luxury *at the expense of a creditor*. In the present case, the evidence shows that Ethyl Lobban could and did, during the five years preceding the declaration of homestead, provide all her own support except house rent, and even as to that, she contributed her full proportion for heat, light, water, and telephone. In addition, she was able to make some payments at least from her own income on the purchase price of an automobile, to pay several hundred dollars on the purchase price of some real estate, and still at all times had an amount of cash under her own control, small, it is true, but sufficient for her actual necessities for many months even had she paid room rent. We think the case presents the situation pointed out by the court in the case of *Union Trust Co.* v. *Cox, supra,* when

it said, "This evidence shows that these two maiden ladies are residing together so as to be of mutual assistance to each other and as companions." The trial court concluded decedent was not the head of a family, and while we are not bound by its conclusions of law, drawn from an admitted state of facts, we think they should be given serious consideration, and unless we are convinced that they are erroneous, they will be followed.

■ For the foregoing reasons, we hold that decedent was not on June 26, 1933, within the meaning of section 1731, *supra,* the head of a family, and, such being the case, was not entitled to declare a homestead. The claim of homestead being the only defense to this action, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.