**ARMSTRONG et al. v. INDEPENDENT OIL & GAS CO. et al.**

No. 14193—Opinion Filed Sept. 18, 1923.

Rehearing Denied Oct. 16, 1923.

(Syllabus.)

**1. Homestead—Constitutional Provisions.**

Section 2 of the homestead provisions of article 12 of the Constitution of the state, in part provides: "Nor shall the owner if married sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law." The last sentence of said article 12 is: "The Legislature may change or amend the terms of this article." This provision places the power in the Legislature to alter the homestead provisions of the Constitution and the method of conveyance of the same.

**2. Same—Conveyance by Spouse Alone—Statutes.**

Section 5242, Comp. Stat. of 1921, or section 1145, Rev. Laws 1910, provides:

"Where the title to the homestead is in the husband, and the wife voluntarily abandons him for a period of one year, or from any cause, takes up her residence out of

the state, he may convey, mortgage, or make any contract relating thereto without being joined therein by her, and where the title to the homestead is in the wife, and the husband voluntarily abandons her, or from any cause takes up his residence out of the state for a period of one year, she may mortgage or make any contract relating thereto without being joined therein by him."

Though theretofore not the law of the state, the Revised laws of 1910 contained this provision. These statutes were adopted by the Legislature in 1913, and the provisions found therein became the law of the state whether theretofore enacted by the Legislature or not, unless, of course, they contravene a constitutional provision.

Under and by virtue of said provision of article 12 of the Constitution, authorizing the Legislature to change or amend its provisions, and the authority of the Legislature to adopt the Code containing the provision mentioned, the said section 5242, Comp. Laws of 1921 (Rev. Laws 1910, sec. 1145), became a part of the homestead law of Oklahoma.

**3. Same—Case.**

Andrew Armstrong and Anna Y. Armstrong were husband and wife. They lived together as such in the state of Texas until about 1906, when he deserted his wife, moved to the Indian Territory, now a part of Oklahoma, where he purchased in 1911 a tract of farm land in Okfuskee county, on which he made his home until August 26, 1918, when he executed a deed thereto to Ed. King for a valuable consideration. In 1920, the said Andrew Armstrong departed this life, a resident of Oklahoma City, Okla. The wife, Anna Y. Armstrong, was never a resident of the Indian Territory or the state of Oklahoma, and never lived on the land in question, but came into the state for the first time for the purpose of testifying in the trial of this cause in the district court of Okfuskee county. Held, that the deed executed August 26, 1918, from Andrew Armstrong to Ed King, conveyed the title to the grantee without the signature of Anna Y. Armstrong, and the judgment of the district court in favor of the defendants is affirmed.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Anna Y. Armstrong and others against the Independent Oil & Gas Company and others. Judgment for defendants, and plaintiffs bring error.

Rush Greenslade, E. C. Mead, Wade James, Phillips & Douglas, and Ames, Lowe & Richardson, for defendants in error.

Carroll, O'Meara & Silverman and Robert T. Neill, for plaintiffs in error.

BRANSON, J. This appeal is prosecuted to reverse the judgment of the district court of Okfuskee county, rendered in an ac-

tion brought on the 6th of April, 1922, by the plaintiffs in error, as plaintiffs, against the defendants in error, as defendants. The plaintiffs in their petition against the defendants alleged, in substance, that in 1911. one Andrew Armstrong became the owner by purchase of the northwest quarter of section 24, in township 11 north of range 11 east, I. M., and that the said Andrew Armstrong was the owner thereof at the time of his death in Oklahoma City, Okla., on the 20th day of December, 1920, and that at the time of his death he left surviving him as his widow the plaintiff, Anna Y. Armstrong, and his children, Ada Pumphrey, Andrew Armstrong, Jr., and O. R. Armstrong, as his sole heirs at law, and that they inherited said land under the statute of Oklahoma on succession. That the defendants and each of them were unlawfully in possession of said premises.

Plaintiffs further alleged that the defendants had taken from said land a large quantity of oil, which they had converted to their own use and benefit; the petition concluding by a prayer for judgment for the possession of the land, that title be quieted in the plaintiffs, and that an accounting be had to determine the amount due from the defendants to the plaintiff by reason of the oil taken therefrom.

For the reason that the answer of the Independent Oil & Gas Company, a corporation, sets out the defense available to each of the defendants alike, it is unnecessary to summarize the answers filed, except that of the Independent Oil & Gas Company. This defendant filed its answer to plaintiffs' petition, and admitted that the land described had been in fact owned by Andrew Armstrong during his life, but denied that Andrew Armstrong owned the same at the time of his death, in December, 1920. The said company, further answering, pleaded that on August 26, 1918, the said Andrew Armstrong, then the owner in fee simple of the land described in plaintiffs' petition, sold and conveyed the same by warranty deed to one Ed King, for a consideration of $7,000, describing himself in said deed as a widower, and that subsequently thereto the said Ed King conveyed the said land by warranty deed to one of the defendants, J. L. Pierson, and that on March 9, 1921, the said Pierson executed an oil and gas mining lease to the defendant Independent Oil & Gas Company, for a valuable consideration, and that out of the conveyance of the said title to the said Ed King, and by him to J. L. Pierson,

and the execution of the oil and gas lease to this answering defendant, the rights and claims of the other defendants in this action grew.

The plaintiffs filed reply to the answer of the Independent Oil & Gas Company and likewise to the answer of the other defendants, in which they alleged and charged that Andrew Armstrong on February 11, 1911, was a resident of Oklahoma, and that, as such, acquired the land in controversy, and that the said land was not within the limits of any city or town, and that the said Armstrong continued a resident of Oklahoma until his death; that at the time the said Andrew Armstrong became a resident of Oklahoma, about 1906, and a long time theretofore and continuously thereafter, he was a married man, and that the plaintiff herein, Anna Y. Armstrong, was his lawful wife; that at the time of purchase of said land the said Andrew Armstrong went into the possession of the same, building thereon a suitable and commodious residence, which he occupied as his home until the date of his execution of the deed to Ed King, August 26, 1918. That during all of this time the said Andrew Armstrong was the head of a family, to wit, his said wife and the said children, and by virtue of his ownership, occupation, and residence on the described land, the same became and was the homestead of the said Andrew Armstrong and his family, and that he owned and held possession thereof as such, and that the said deed made as aforesaid to Ed King was not signed by the said wife of the said Andrew Armstrong, to wit, Anna Y. Armstrong, as provided by the Constitution and laws of the state of Oklahoma, and that the said deed was a nullity, and conveyed no title to the said Ed King.

To this reply of the plaintiffs, while not required, the Independent Oil & Gas Company pleaded and, in substance, denied that Anna Y. Armstrong was the wife of Andrew Armstrong, deceased; denied that he entered possession of said land and occupied it as a home, and denied that he was while owning said land the head of his family, or of any family, and denied that the said land was the homestead of Andrew Armstrong or his family, and denied that the said deed to Ed King was void, denied that Andrew Armstrong had any title in said property after executing said conveyance, and further alleging that the plaintiff Anna Y. Armstrong at the time Andrew Armstrong purchased the property in litigation owned, occupied, used, and claimed a homestead in the state of Texas, and that she never lived on or occupied the land in

litigation as a homestead, and never had any intention of occupying the same until oil was discovered thereon, and that the claims of herself and her coplaintiffs were fraudulent, she being a nonresident of Oklahoma, and not having lived with the said Andrew Armstrong as his wife for more than 20 years; that none of the plaintiffs were members of the family of Andrew Armstrong or dependent upon him, but that they had separate homes of their own in the state of Texas, and concluding with a prayer that the title of the defendants through the deed made to Ed King be quieted as against the plaintiffs.

Upon these issues, the cause was tried to the court and jury, the following evidence in effect being presented: It was stipulated between the parties that the plaintiffs were the sole and only heirs of Andrew Armstrong, deceased. The plaintiffs introduced a marriage record, showing the said Andrew Armstrong was on May 20, 1885, married to the plaintiff, Anna Yell (Armstrong), that the said Andrew Armstrong had theretofore been married, and that of these two marriages the other plaintiffs, children of the said Andrew Armstrong, were born. That the plaintiff O. R. Armstrong was the son of the deceased, Andrew Armstrong, and the plaintiff Anna Y. Armstrong; that he was born in the state of Texas, at Cotulla, in 1889, at what was known as the Gilmer Place, then the home of his father and mother. That at about the age of 8 years, his mother, his father, and himself moved to a place designated as Motherall Place, in the town of Cotulla, which they occupied until August, 1906, at or about which last named date the said Andrew Armstrong left the plaintiff Anna Y. Armstrong and O. R. Armstrong, his wife and son respectively, and never returned to them. That he came to the state of Oklahoma, or rather to the Indian Territory, as his place of settlement was at that time, and located near or at the town of Hoffman, in what is now Okmulgee county, Okla.; that the father and mother never lived together thereafter as man and wife, but that she desired to come to him and live with him, but he refused to permit her to find a place either in his home or in his heart. That the plaintiff Anna Y. Armstrong went to the city of Austin, in the state of Texas, with the plaintiff O. R. Armstrong, where he continued to attend school and college, returning to the town of Cotulla during the summer vacation seasons, until the year 1913, when the plaintiff O. R. Armstrong, having completed his college course, located in the city of El Paso, in the state of Texas, and engaged in the practice of law. His mother, the plaintiff Anna Y. Armstrong, at that time went and made her home with a brother, who was a widower, after living for a time with a friend in the town of Cotulla named Kate Burwell. The plaintiff Anna Y. Armstrong never saw her husband, Andrew Armstrong, from the time he left in 1906 until his death, in December, 1920; that she had never been a resident of Oklahoma or the Indian Territory, and never was within this state until she appeared at Okemah as a witness in this cause. That Andrew Armstrong had through his lawyer importuned her to seek a divorce against him for statutory grounds which he himself furnished, but that she refused to bring suit against him for divorce, and she had never given him any grounds for divorce, and therefore none had ever been obtained. The evidence disclosed that Andrew Armstrong lived on the land in question from the time he purchased the same in 1911 until after he conveyed the same in August, 1918; that at various intervals other people lived in the house with Armstrong for the purpose of keeping house for him.

On the conclusion of the evidence for the plaintiffs, a demurrer thereto was interposed by the defendants, which was by the trial court sustained, the cause withdrawn from the jury, and judgment rendered against the plaintiffs and in favor of the defendants. To reverse this judgment, omitting the formal assignments of error, the plaintiffs contend on this appeal, among numerous other propositions argued, that:

"(1)   When Andrew Armstrong fixed his domicile in Oklahoma, his family became a family in this state, and when he purchased the property in litigation and lived on it, it became a homestead in this state, and plaintiff Anna Y. Armstrong was not a nonresident within the meaning of section 3344, Rev. Laws Okla. 1910.

"(2)   That when Andrew Armstrong executed the deed to Ed King on August 26, 1918, he was a married man, and he could not sell the homestead without the consent of the plaintiff Anna Y. Armstrong, his wife, and his attempted conveyance was void."

Plaintiffs in error say in their brief:

"The question to be determined by the Supreme Court is not of a nature requiring an examination of the pleadings. The question in issue is the validity of the deed from Andrew Armstrong to Ed King. Therefore, prolixity may be evaded by

merely stating that all of the other defendants admitted title in Andrew Armstrong at the time he executed the deed to Ed King, and, maintaining the validity of such instrument, they treated King as their ancestor in title. Therefore, since the pleadings of the Independent Oil & Gas Company clearly embraced every defensive issue incident to a proper consideration of the case, no other defensive pleadings will be considered." '

Having briefly stated the main propositions of law relied upon by the plaintiffs in error, the legal questions can be more thoroughly understood by stating the defensive legal propositions. They are, in substance: *

(1) That the legal fiction that the wife's domicile follows that of the husband is without application to the initiation of the homestead under the facts in this case.

(2) That in order to initiate a homestead under the law of Oklahoma, the family must actually be in the state, and the land must be actually occupied as a homestead, if occupancy as such homestead is relied on, rather than provable intention to occupy it, to establish its homestead character.

(3) "Where the wife for any cause takes up her residence out of the state for a period of one year, the husband may convey the homestead without the wife joining in the deed"—meaning, of course, where the title to the property is in the husband.

As we view the record in this case, it is unnecessary to review the numerous authorities cited by counsel for the respective parties to sustain their contentions pro and con as to the residence of the wife being that established by her husband. The only question properly to be determined under the issues now before this court is whether or not the trial court committed any error in rendering judgment for the defendants against the plaintiffs. At the expense of repeating, if the deed made by Andrew Armstrong on the 26th day of August, 1918, was effective to convey the title to Ed King without the signature of Anna Y. Armstrong thereon, then the judgment of the district court of Okfuskee county in favor of the defendants and against the plaintiffs was a proper judgment, and should be affirmed. At the threshold of the inquiry into its validity lie the provisions of the law of Oklahoma governing homesteads. This law, in the main, is found in article 12 of the Constitution of the state (Williams' Annotated Constitution, pages 157 to 160). The said

article 12 provides, in effect, that the homestead is reserved to the family, it making no difference as to whether the title thereto is in the husband or the wife; section 2 thereof specifically providing:

"Nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law."

Section 3343, Rev. Laws 1910, fixes the method of conveying the homestead where the owner is married, and is, in effect, that the instrument purporting to convey the same shall not be valid unless subscribed by both the husband and the wife, where both are living, and not divorced or legally separated.

On consideration, if the third proposition, supra, of the defendants in error is adjudged the law, it will determine all the necessary issues involved herein. This proposition is based upon section 5242, Comp. Stat. of 1921, or section 1145, Rev. Laws 1910. It provides:

"Where the title to the homestead is in the husband, and the wife voluntarily abandons him for the period of one year, or for any cause, takes up her residence out of the state, he may convey, mortgage, or make any contract relating thereto without being joined therein by her, and where title to the homestead is in the wife, and the husband voluntarily abandons her, or for any cause takes up his residence out of the state for a period of one year, she may mortgage or make any contract relating thereto without being joined therein by him."

Can this statute be sustained under the said chapter 12 of the Constitution of the state? At the conclusion of the said chapter 12, it is provided:

"The Legislature may change or amend the terms of this article."

The said above-quoted section 5242, Comp. Stat., was a provision of the statutes of the territory of Oklahoma; that it was not brought forward as part of the statutory law of the state by section 2 of the schedule to the Constitution was expressly held in the case of Wheeler v. Adams, 44 Okla. 696, 145 Pac. 1158, the court in said cause holding the said section was repugnant to section 2 of article 12 of the Constitution, providing how the homestead of the family may be sold, and was therefore not put in force by said section 2 of article 25 of the Constitution.

This decision, however, was a declaration of the law before the Revised Laws of 1910 were adopted by the Legislature

in 1913. The Revised Laws of Oklahoma of 1910 contained the above-quoted section. These statutes were adopted in whole as a Code by an act of the Legislature in 1913, and the provisions found therein thereby became the law of the state, whether theretofore enacted or not. Under and by virtue of the said quoted provision of article 12 of the Constitution, authorizing the Legislature to change or amend the terms of the article on homestead, and by virtue of the power of the Legislature to adopt the Code containing sections not theretofore the statutory law of the state, the said section became a part of the homestead law of Oklahoma. Holcomb v. Chicago, R. I. & P. Ry. Co., 27 Okla. 667, 112 Pac. 1023; St. L. & San Francisco Ry. Co. v. State, 26 Okla. 62, 107 Pac. 929; Musser et al. v. Baker, 53 Okla. 782, 158 Pac. 442; Readdy v. Mallory, 57 Okla. 499, 157 Pac. 742; Central of Georgia Ry. Co. v. State (Ga.) 31 S. E. 531.

But the plaintiffs in error say that if this provision of the statute is in full force and effect, it is inapplicable to the facts in the case at bar, for the reason that the statute provides that where either spouse for any cause, takes up his or her residence out of the state, the other may convey the homestead, and that Anna Y. Armstrong was never a resident of the state of Oklahoma as meant by said statute, and therefore does not 'fall within the meaning and contemplation of the statute. If this statute would authorize the husband to convey the homestead without the signature of the wife, where she had been a resident of the state of Oklahoma, and the property had the status of a homestead, but had merely for a year taken up her residence in the state of Texas, then to concur in the argument of counsel would be to hold that a person who had never been a resident of the state of Oklahoma occupied a position of advantage superior to that of one who had been a resident, but had taken up a residence for one year in another jurisdiction. This we could not conclude as being within the meaning of the statute. Certainly the fact that the plaintiff Anna Y. Armstrong had never been a resident of Oklahoma would put her in no better position than if she had been a resident and taken up her residence for a period of a year, prior to the execution of the deed by her husband, in the state of Texas. But all of the evidence on behalf of the plaintiff showing that she had not only never been a resident of the state, had never lived on the land in question, but had never been inside the state until she appeared as a witness in this cause, makes the intent and purpose of this statute controlling here. The plaintiff Anna Y. Armstrong's actual residence was in the state of Texas, and never in the state of Oklahoma. The conveyance of the husband, Andrew Armstrong, though without her signature, is valid, and was effective to convey the legal title to the property in litigation to the defendant Ed King. This being true, it follows that the judgment of the district court of Okfuskee county was correct, and is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.