OSCN Found Document:IN THE MATTER OF THE ESTATE OF EVANS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF THE ESTATE OF EVANS
2024 OK 65
Case Number: 120854
Decided: 09/17/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 65, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE ESTATE OF MELISSA EVANS, DECEASED.
PETITIONER, JOSHUA EVANS, PERSONAL REPRESENTATIVE, APPELLANT
v.
DEBORAH JEAN MATLOCK, PERSONAL REPRESENTATIVE, ESTATE OF GEORGE DARRELL BLAYLOCK, DECEASED, APPELLEE
APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY, 
STATE OF OKLAHOMA, HONORABLE SUE NIGH
¶0 Melissa Evans was involved in a fatal motor vehicle accident with a car being driven by Darrell D. Blaylock. Both Evans and a passenger in Blaylock's automobile, George D. Blaylock, were killed in the crash. Evan's son, Joshua Evans, initiated a probate proceeding and was named personal representative of his mother's estate. Later, Joshua Evans filed a motion seeking a court order declaring that Melissa Evan's house qualified for the homestead exemption. The probate court denied this request and Joshua Evans commenced an interlocutory appeal. We retained the case and now hold that the subject real property does not qualify for either a constitutional or probate homestead exemption.
MOTION TO RETAIN PREVIOUSLY GRANTED; TRIAL 
COURT AFFIRMED AND THE CAUSE REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION.
JAMES W. STAMPER, TULSA, OK, ATTORNEY FOR APPELLANT 
J. TODD WILLHOITE, CLAREMORE, OK, ATTORNEY FOR RESPONDENT/APPELLEE 
GURICH, J. 
FACTUAL & PROCEDURAL HISTORY
¶1 On September 3, 2020, Melissa Evans and Darrell D. Blaylock were involved in a two-car motor vehicle accident on Highway 412 in Mayes County, Oklahoma. Evans and a passenger in Darrell's automobile, George Darrell Blaylock, both died at the scene of the collision. Joshua Evans, Melissa's son, commenced an action in Rogers County on October 5, 2020, to probate his mother's estate. Therein, Joshua requested the court admit Melissa's last will and testament; appoint Joshua as the personal representative per the will; and judicially determine all heirs devisees and legatees.
[1] On November 17, 2020, the lower court entered an order admitting Melissa Evans' will to probate, naming Joshua Evans as personal representative, and identifying all heirs, devisees and legatees of the estate. Her will identified only three children: Joshua Evans (son), Ryan S. Evans (son), Tamra C. Evans (stepdaughter).[2] Melissa's grandchildren were not mentioned in her will. Around the same time, Deborah Matlock filed a probate proceeding in Mayes County to admit the will of George D. Blaylock.[3] The will was admitted to probate and Matlock appointed personal representative on November 4, 2020.
¶2 On January 29, 2021, Matlock filed a wrongful death lawsuit against the estate of Melissa Evans in Mayes County, Case No. CJ-2021-16. Therein, she alleged Melissa was negligent and caused the subject fatal car wreck. On May 5, 2021, Matlock filed a pleading styled Creditor Demand for Inventory and Entry of Appearance. Evans filed an inventory with the court, which identified Melissa's house as the primary asset of the probate estate.
[4]
¶3 Ostensibly recognizing Matlock's interest in collecting any judgment in the wrongful death proceeding by forcing the sale of Melissa's residence, Joshua filed a motion seeking a declaration from the probate court that the real property qualified for the homestead exemption provided for in the Oklahoma Constitution. Melissa Evans was divorced and the sole owner of her residence at the time of her death. The motion alleged that Joshua and his children had resided in the home since 2015. Additionally, the motion claimed, without any details, that Joshua provided his mother with financial and medical assistance while residing in the home. Joshua did not assert that she provided support to either him or his children. Matlock filed her objection to the motion and the matter was set for a hearing on October 11, 2022. In her response to the motion, Matlock noted that Evans' property was the subject of a foreclosure action in Specialized Loan Servicing, LLC v. Evans, Rogers County Case No. CJ-2022-236.
[5]
¶4 Neither Joshua nor his attorney appeared for the hearing and the motion was denied by court minute. On October 12, 2024, Joshua's attorney filed a motion to vacate the court's preliminary ruling on the homestead issue. A hearing on the motion to vacate was scheduled for November 21, 2022; however, the probate court effectively denied the motion by entering a formal order on October 19, 2022, rejecting the homestead claim. Therein, the trial judge concluded that because Melissa Evans did not leave a surviving spouse or minor children, her real property was not exempt and was available under 58 O.S.2011, § 381 to satisfy debts of the estate.
¶5 Joshua filed the present interlocutory appeal, claiming the district court's disposition of the homestead issue was appealable as a matter of right by virtue of 58 O.S.2021, § 721. We retained the appeal and now affirm the trial court's order rejecting Joshua Evans' homestead claim.
STANDARD OF REVIEW
¶6 This appeal requires us to determine whether Joshua Evans is entitled to claim a homestead exemption, as an adult child resident and presumptive heir of Melissa Evans' home. The facts are not disputed, and we are presented with only legal questions concerning the ability of Joshua Evans to assert a homestead interest in the subject real property owned by his mother. See e.g., Matter of Estate of Fulks, 2020 OK 94, ¶ 9, 477 P.3d 1143, 1147 (reiterating that questions of statutory interpretation and harmonization are legal matters subject to de novo review).
¶7 As a question of law, our evaluation of this case is guided by applying a de novo standard of review. See Strickland v. Stephens Prod. Co., 2018 OK 6, ¶ 4, 411 P.3d 369, 372 (citing Lee v. Bueno, 2016 OK 97, ¶ 6, 381 P.3d 736, 739). When looking at the proper scope of a statute or an individual's right to claim constitutional protections, based on uncontested facts, we must utilize review de novo. Indep. Sch. Dist. # 52 of Okla. Cnty. v. Hoffmeister, 2020 OK 56, ¶17, 473 P.3d 475, 485. Under the de novo standard of appellate review, this Court is vested with "plenary, independent, and non-deferential authority to examine the issues presented." Harmon v. Cradduck, 2012 OK 80, ¶ 10, 286 P.3d 643, 648.
ANALYSIS
¶8 As noted above, the unique question raised in this appeal is whether Joshua should be afforded the constitutionally prescribed homestead exemption set forth in Okla. Const. Art 12, § 2. Second to this initial query is whether assertion of the homestead right is controlled by 58 O.S.2011, § 311. In connection with these issues, we also look at prior decisions addressing the right of individuals to claim the homestead exemption. Joshua raises several arguments on appeal, which we have summarized as follows: (1) whether Okla. Const. Art. 12, § 2 should be broadly and liberally construed, such that the term "family" encompasses any related individuals occupying the subject property as their primary residence; (2) whether Joshua Evan's children (decedent's grandchildren) should be included in the term family, such that the property is properly characterized as homestead; (3) whether Okla. Const. Art. 12, § 2 prevails over any conflicting statutory enactment, including 58 O.S.2011, §§ 311; and (4) whether an heir-at-law, in actual possession of real property, automatically steps into the shoes of a deceased property owner for purposes of the homestead exemption.
¶9 Recently, we reiterated this Court's responsibilities when interpreting the applicability of a state constitutional provision:
This Court is the final interpreter of Oklahoma's laws, including the Oklahoma Constitution. We are bound to follow the Oklahoma Constitution, and we cannot circumvent it because of private notions of justice or because of personal inclinations. . . . 
The objective of construing the Oklahoma Constitution is to give effect to the framers' intent, as well as the people adopting it. When a challenge is limited to the Oklahoma Constitution, the Court looks first to its language, which if unambiguous, binds the Court. Every provision of the Constitution and statutes of Oklahoma is presumed to have been intended for some useful purpose and every provision should be given effect. The Court, therefore, construes constitutional provisions as a consistent whole in harmony with common sense and reason. . . . 
* * * *
This Court must interpret constitutional provisions in conformity with their ordinary significance in the English language--given their commonly accepted and nontechnical meaning. 
* * * *
Constitutional construction requires the Court to garner the drafter's intent, as well as the people adopting it, from the plain language of the provision.
Inst. for Responsible Alcohol Pol'y v. State of Okla., ex rel. Alcoholic Beverage Laws Enf't Comm'n, 2020 OK 5, ¶¶ 11-12, 14, 16, 457 P.3d 1050, 1055-56.
Oklahoma's constitutional "family" homestead exemption does not apply based on the facts of this case.
¶10 Initially, we must determine what the term "family" means for purposes of applying the homestead exemption in Article 12, § 2; and further decide if the term should include a non-dependent adult child and/or grandchildren living in the subject property with their parent/principal owner(s). In addition, the inquiry necessitates a determination of the scope of Article 12, § 2. We begin by looking at the actual text of Okla. Const. Art 12, § 2, which reads:
The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, Nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage.
In propositions one and two, Joshua maintains that the plain language in Art. 12, § 2 should be interpreted in a manner which broadly defines family. He further argues that our prior decisions require a liberal application of the homestead exemption. Historically, this Court has generously construed Oklahoma's constitutional and statutory homestead provisions. State ex rel. Means v. Ten (10) Acres of Land, 1994 OK 71, ¶ 16, 877 P.2d 597, 601; see also, Albert H. Ellis, A History of the Constitutional Convention of the State of Oklahoma, Homestead Exemptions, 154 (Econ. Printing 1923).
¶11 Shortly after the passage of the Oklahoma Constitution we issued two opinions which examined Okla. Const. Art. 12, § 2 and its scope. Two of those were issued the same day in 1916: Carle v. Bamberger, 1916 OK 614, 158 P. 599 and Union Trust Co. v. Cox, 1916 OK 113, 155 P. 206. In Carle v. Bamberger, the Court considered whether a tract of land was homestead within the meaning of Okla. Const. Art. 12, § 2. Bamberger had filed an action against Edmonia Dautell and her son to foreclose a note and mortgage pertaining to the subject property. Another creditor, Carle, had a prior judgment which he claimed was superior to the mortgage. To determine the priority between the mortgage and lien, the Court noted that it had to first determine if Dautell's property qualified as her homestead on the date of Carle's judgment. The answer to this question hinged on whether Dautell and her son were living as a family in the home. Id. ¶ 5, 158 P. at 600. Determining that the property did qualify as homestead, the Court concluded:
[W]e think the relation existing between Edmonia and her unmarried son was sufficient to constitute those two a family within the contemplation of the statute. This for the reason that pursuant to a moral obligation between them she contributed to his support with the shelter of her roof, and he contributed to her support from his wages.
Id (citations omitted). Thus, we believe it is possible for a mother and her adult child to cohabit as a family unit. However, this does not end our inquiry.
¶12 In Union Trust Co. v. Cox, the Court was faced with another similar factual scenario. Frances and Surena Cox were sisters residing together on a tract of land in Pawnee County, Oklahoma. Frances originally established the tract as her "homestead," but deeded the same to Surena in 1902. In 1906, Dora McElhaney, a cousin of the two sisters, began residing on the homestead. Union Trust Company obtained a judgment against both Frances and Surena on November 11, 1910, and the creditor subsequently filed a judgment lien with the Pawnee County Clerk. Surena re-deeded the real estate back to Frances on March 20, 1911 and then passed away approximately one month later. In June 1913, Union sought to execute against the land to collect on its previous judgment. Frances filed an objection to the action, claiming the subject property qualified as homestead and was, therefore, exempt from attachment. The district court granted Frances's request for injunctive relief and Union initiated an appeal.
¶13 On appeal, the Court considered whether the property titled in Frances's name was "subject to the judgment lien in favor of the plaintiff, or was the same exempt from the operation thereof under the provisions of the Oklahoma homestead and exemption laws?" Id. ¶ 2, 155 P. at 207. As an initial matter, the Court concluded that "two sisters residing together, if the other essential requisites concur, will constitute a "family" under the legal acceptation of the word; but we do express a great doubt that the evidence in this case shows the existence of a family even while they were residing together." Id. ¶ 2, 155 P. at 208. The Court went on to provide a non-exhaustive list of what constitutes a family:
The family may be composed of a brother and sister, a husband and wife, a father or grandfather and his children or grandchildren, a son and his mother and sister, a father--in--law and his dependent daughter--in--law, an unmarried man and his illegitimate offspring, an unmarried woman and her adopted child, a husband and his children, deserted by the wife and mother, a widower and his adopted daughter and her husband, a divorced man living with his minor unmarried son, a son living with his widowed mother and supporting her, a widow living with and supporting the children of her deceased husband by a former wife.
* * * *
Bearing in mind that in order to constitute a family there must be (1) a social status, (2) there must be a head who has a right, at least in a limited way, to direct and control those gathered into the household, and (3) this head must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial dependence of the other members for this support.
Id. ¶ 7, 155 P. at 209-10. Because the record demonstrated that Surena and McElhaney resided together as companions, to be of mutual assistance to the other, and it did not reflect that McElhaney was dependent upon Frances' moral or financial support, the Court found that the property did not qualify for the homestead exemption. Id. ¶ 8, 155 P. at 210. However, there is a critical distinction between the facts in the present appeal and the Union Trust case. In the latter, the Court examined the relationship between two living individuals. In the Evans appeal, the property owner, Melissa Evans, is deceased. The importance of this difference is set out in the subsequent paragraphs of this opinion.
¶14 The Union Trust Court also determined that the homestead allowance arising out of Oklahoma's probate laws was inapplicable:
But the right of the survivor to continue to occupy the homestead after the constituent members of the family have been broken up, whether conferred by statute or interpolated by the courts, as far as our research has led us, has never been extended further than to the surviving husband or wife and their minor children, unless conferred by statute.
* * * *
In this state we have a statute (section 6328, Rev. Laws 1910)
[6] extending the right to the husband or wife to continue to possess and occupy the homestead, acquired during the life of both, after the death of the other, and this right is also extended to the children after the death of both until the youngest becomes of age; but we have no statute giving this right to the survivor of a family other than a family based upon marriage relations. It might be well argued that this beneficent provision ought to extend to just such instances as is presented in the case at bar, but that is a matter within the province of the legislative branch of the government.
Id. ¶¶ 2-3, 155 P. at 208-09 (emphasis added); see also Greenshaw v. Brown, 1923 OK 823, ¶ 10, 219 P. 934, 937 (recognizing that the probate homestead allowance triggered on the death of a property owner only extends to a surviving spouse and/or minor children). However, on the death of the family-member owner, as noted in Union Trust, the property is divested of its homestead character, and unless protected by virtue of legislative enactment, is subject to attachment to satisfy the debts of a decedent. See Manning v. Dosher, 1934 OK 101, ¶¶ 6-7, 29 P.2d 966, 968 overruled on other grounds by Hembree v. Magnolia Petroleum Co., 1935 OK 893, 56 P.2d 851.[7]
Title 58 O.S.2011, § 311 does not provide a homestead allowance to Appellant Joshua Evans.
¶
15 Although this Court has routinely limited the probate homestead allowance to a surviving spouse and/or minor children, it is necessary to examine 58 O.S.2011, § 311 and relevant decisions emanating from this enactment. Section 311, provides in relevant part:
Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead
, which shall not in any event be subject to administration proceedings, except as in this title provided, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. The title to the land set apart for the homestead property shall pass, subject to the right of homestead, the same as other property of the decedent and shall be included in the decree of distribution. 
* * * *
No such property shall be liable for any prior debts or claims whatever.
[8] (emphasis added).
We went on to explain the purpose behind the statutory probate allowance in Wallace's Estate:
Upon the death of a spouse, the surviving spouse and/or minor children are given by [Section] 311, supra, the right to 'continue to possess and occupy the whole homestead.'
The 'whole homestead' is that property of the family which was impressed with constitutional homestead character at the time of the death. 
The survivor's right to continued possession and occupation of the property regardless of where title is lodged, is a personal and individual right. It is a special right to continue to possess and occupy the homestead during the lifetime of the survivor. It is not an interest in the testator's property, it is not subject to testamentary disposition, and it is distinct from the interest a surviving spouse takes in the land by inheritance or devise. It is an interest distinct from title and does not affect title to the property.
Once the probate homestead attaches, the right of the survivor to occupy the homestead is superior to the rights of coheirs to their property interest, and their interest is suspended until the probate homestead is terminated. 
Id. ¶¶ 19-22, 648 P.2d at 832 (quotations in original, citations omitted).
¶16 Recognizing a distinction between the constitutional homestead exemption and the statutory homestead allowance set forth in the probate code, the Court added:
The policy considerations served by the constitutional homestead are distinct from those of the probate homestead. The constitutional homestead is intended to protect the family from creditors only. The probate homestead gives the surviving spouse (and/or child) a special, individual right of lifetime occupation which is intended to protect the survivor against all persons (except holders of certain enforceable liens).
Id. ¶ 23, 648 P.2d at 832. Thus, contrary to Appellant's assertion, there is no conflict between Article 12, § 2 and 58 O.S.2011, § 311. Yet, even if the two were inconsistent, Okla. Const. Art. 12, § 3 permits the State Legislature to amend Article 12. See In re Arnold, 2003 OK 63, ¶ 4, n.1, 73 P.3d 861, 862; Armstrong v. Indep. Oil & Gas Co., 1923 OK 599, ¶ 15, 219 P. 353, 356 (recognizing the Legislature's authority to amend the terms of Article 12 through statutory enactments).
¶17 Consequently, Joshua Evans and his children do not fall into the category of persons protected by the homestead allowance in Section 311.
[9] However, a prior decision from this Court obfuscates that clarity. In Hembree v. Magnolia Petroleum Co., the Court considered the homestead interests of both a decedent's minor and adult children. In concluding the adult children possessed a statutory homestead interest in their deceased mother's property, the Court explained:
While the vesting of the homestead right in the children is dependent upon the existence of a minor child or children, the statute in no way excludes adult children who may be occupying the premises along with the minor or minors at the time of the death of the last parent. The defendants in this case refer to Manning v. Dosher, 167 Okl. 368, 29 P.(2d) 966, 967, as authority that adult children cannot continue to possess and occupy the homestead. In that case the second syllabus by the court is as follows: 'Neither a grandchild nor adult child has any right to continue to possess and occupy the homestead, under the provisions of section 1223, O.S.1931, the provisions of that section being limited to the husband or wife and the minor children of the deceased owner of the land.' This expression would seem to exclude adult children from the homestead claim. However, in the body of the opinion, we find the following statement: 'Section 1223, O.S.1931, which provides, in part, as follows: * * * is not applicable. The testator left neither surviving wife nor minor child.'
The unqualified statement that an adult child could not continue to possess and occupy the homestead was clearly unnecessary to complete determination of the case and to that extent purely obiter dicta, and the same is expressly overruled.
It therefore follows that the homestead right of occupancy vested in the children of A. O. Hembree and Maudie Hembree upon the death of the mother, and such interest vested in not only the minor children, but also in such adult children as were occupying the premises as a home upon the mother's death.
[10]
Id
. ¶¶ 55-58, 56 P.2d at 859 (citations and quotations in original). Hembree is clearly distinguishable from the present action because it involved minor children who were residing in the homestead with adult siblings at the time of their mother's death. Under the relevant statute, the minor children in Hembree would have clearly been entitled to maintain occupancy in the homestead following the death of their last surviving parent. Thus, it did not necessarily offend the homestead statute to allow the adult children to also remain in the property with their siblings. Nevertheless, to the extent the decision can be read as authority for the proposition that an adult child possesses an independent homestead interest by virtue of Section 311, Hembree is expressly overruled.
¶18 Because Joshua Evans is not entitled to claim a homestead allowance under Section 311, it necessarily follows that his children (Melissa Evans's grandchildren) also are excluded from the scope of the statutory protection. See Hardridge v. Hardridge, 1934 OK 174, ¶ 42, 31 P.2d 597, 603 (probate homestead is solely for the benefit of a surviving spouse and minor children; it does not include grandchildren), citing Manning v. Dosher, 1934 OK 101, ¶¶ 7-8, 29 P.2d 966, 968 overruled on other grounds by Hembree v. Magnolia Petroleum Co., 1935 OK 893, ¶ 57, 56 P.2d 851, 859.[11]
Appellant's interest in his mother's real property vested on her 
death, but was still subject to administration, including the 
right of his mother's creditors to seek repayment for debts.
¶
19 Last, we look at Appellant Joshua Evans' assertion that the subject property constitutes his homestead because he was an heir of his mother's estate, residing in and having possession of her homestead at the time of her death. To support this argument, Joshua refers us to the case of Davis v. Morgan, 1939 OK 468, 95 P.2d 856, which we find is controlling of the outcome in the present appellate proceeding.
¶20 Lula Davis died intestate as the owner of an eighty-acre tract of land in Caddo County, Oklahoma. She had no children or surviving spouse, however, there were 10 living heirs-at-law on the date of her death. Joe Davis was Lula's brother. He had been living in a home on Lula's property together with his wife and children. By operation of law, Joe possessed an undivided future interest in Lula's real property. Although Joe did not have a present ownership interest in the real estate, he entered into a rental agreement concerning the property with the administrator of Lula Davis's estate. Subsequently, a creditor obtained a judgment against Joe and he sought to collect by executing against the 80-acre tract. Joe filed an objection to prevent the sale, but the trial court denied the same.
¶21 Joe brought an appeal and this Court reversed. In doing so, the opinion noted that title to estate property is vested in the beneficiaries immediately on the death of the property owner. Id. ¶ 8, 95 P.2d at 857; citing Seal v. Banes, 1934 OK 299, ¶ 130, 35 P.2d 704, 722.[12] Additionally, the Court noted that having an undivided interest is not inconsistent with a homestead exemption claim. Id. citing Hein et al. v. Wahl, 1935 OK 40, 40 P.2d 683. Finally, the Court recognized that "homestead rights may attach to any interest in real estate which constitutes the dwelling place of the family." Id. ¶ 9, 95 P.2d at 857; quoting Lehman v. Tucker, 55 P.2d 62, (holding an undivided remainder interest subject to life estate entitled to homestead status). Following these decisions, the Court held that "an heir in possession of real estate in which he owns an undivided interest may assert that the same constitutes his homestead even though the estate of the person from whom he inherited is in the process of administration." Id. ¶ 11, 95 P.2d at 858.
¶22 Although the opinion only refers to the immediate vesting of an intestate interest in estate property, the holding in Davis is equally applicable to cases where the decedent died with a valid will in place. Title 84 O.S.2011, § 175 provides "[t]estamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death." See also 84 O.S.2011, § 212 ("[t]he property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the district court. . .").
¶23 One critical distinction in Davis was that it involved a debt owed by an heir/beneficiary rather than the decedent. Davis, ¶¶ 3-4, 95 P.2d 856-57. And as the Davis Court noted, while title vests immediately, the property is still subject to administration of the estate under the supervision of the district court. Id. ¶ 8, 95 P.2d at 857; see also White House Lumber Co. v. Howard, 1930 OK 126, ¶ 9, 286 P. 327, 329 (recognizing that an heir's actual interest in real estate is determined by the district court, and prior to distribution is subject to probate procedure). Although no Oklahoma case has defined the phrase "administration of the estate," one legal treatise notes that it is "the management of a decedent's estate to collect and preserve the assets, to pay debts, and to make distribution." 33 C.J.S. Executors and Administrators § 3 (May 2024); see also, Seal v. Banes, ¶ 130, 35 P.2d at 722 (explaining that "title to the land vested in the heirs immediately upon the death of the father subject to the control of the probate court, and, if necessary, a sale thereof to pay decedent's debts and expenses of the administration proceedings"). This is distinct from Section 311 which specifically exempts homestead property passing to the surviving spouse and/or minor children. We believe this factual difference is controlling of the outcome in the Evans appeal. Although Joshua Evans's interest in his mother's home may have vested immediately on her death, it was still subject to administration under the Probate Code. This, of course, includes the right of creditors to seeking repayment of any indebtedness owed by the decedent. 58 O.S.2011, §§ 331 - 354.[13]
¶24 Title 58 O.S.2011, § 381 reads:
All the property of a decedent, except as otherwise provided for the homestead and personal property set apart for the surviving wife or husband and minor child or children, shall be chargeable with the payment of the debts of the deceased, the expenses of the administration, and the allowance to the family. And the property, personal and real, may be sold as the court may direct, in the manner hereinafter prescribed. There shall be no priority as between personal and real property for the above purposes.
Thus, unless the statutory probate homestead allowance is available to shield real property from being utilized to satisfy Melissa Evans's liabilities, her home and the accompanying acreage are available to satisfy any indebtedness. As we have previously determined, Melissa's real property lost its constitutional homestead character at the time of her death. Further, neither Joshua Evans nor his children qualify for the probate homestead exemption allowed by 58 O.S.2011, § 311. Accordingly, the trial judge properly denied the motion seeking a declaration that the real property qualified for homestead protection.
CONCLUSION
¶25 During Melissa Evans's lifetime, her property would have clearly been protected by the Oklahoma homestead exemption. However, that exemption was extinguished on her death. The constitutional homestead exemption, which protects the family home from creditors was not available to Joshua Evans. Similarly, the homestead allowance in 58 O.S.2011, § 311 is only available to a surviving spouse and/or minor children of the decedent. Though Joshua Evans's interest in the property became vested at the time of his mother's death, the property was still subject to the control of the district court and Oklahoma probate procedure. Title 58 O.S.2011, § 381 provides that non-exempt assets are available for payment of a decedent's debts. As such, Melissa Evans's real property is available to satisfy any debts of her estate, and accordingly, the trial court's decision to reject Joshua Evans's homestead claim is affirmed.
MOTION TO RETAIN PREVIOUSLY GRANTED; TRIAL COURT 
AFFIRMED AND THE CAUSE REMANDED FOR PROCEEDINGS
CONSISTENT WITH THIS OPINION.
CONCUR: KANE, C.J., ROWE, V.C.J., WINCHESTER, EDMONDSON, GURICH, AND KUEHN, JJ.
CONCUR IN RESULT: KAUGER, COMBS, JJ.
NO VOTE: DARBY, J
FOOTNOTES
[1] The petition notes that two natural children and a stepchild are named as beneficiaries under the will; however, the petition only identifies Joshua Evans and his biological brother Ryan Evans. Petition for Probate of Will, O.R. at 2. Likewise, the will identifies Tamra C. Evans as a child of Melissa Evans, but neither the petition nor associated order recognize Tamra as an heir, devisee or legatee.
[2] Ryan Evans filed a disclaimer of any interest in the probate estate on April 15, 2021.
[3] Matlock filed her petition seeking appointment as personal representative of the estate of George Darrell Blaylock on or about November 4, 2020.
[4] The inventory consisted of the house, a bank account, a lawnmower, and miscellaneous household items. Other than the house, valued at $169,553.00, the value of all remaining items was de minimis. Inventory and Appraisal, O.R. at 34-35.
[5] A review of the court docket reflects that the case has been pending for more than two years. Although no judgment has been entered, the creditor filed a motion for summary judgment which has not been ruled on to date.
[6] Section 6328 (Rev. Laws 1910), referenced by the Court in Union Trust, was the predecessor to 58 O.S.2011, § 311. The 1910 enactment is nearly identical to the current version of the statutory allowance for a surviving spouse and minor children.
[7] The Manning Court explained that real property is protected as homestead "by reason of the existence of a family" but would be available to satisfy "the debts of the testator after the death of the testator and after his family had ceased to exist" unless the property qualified under the probate homestead statute (ie., Section 1223, O. S. 1931).
[8] The relevant language in Section 311 remains unchanged since its original adoption from the Dakota Territory in 1890. Okla. Stat. 1890, Ch. XIX, Art. 5, § 1 (pp. 317-18); Okla. Stat. 1910, § 6328 (p. 1735).
[9] In his briefs on appeal, Appellant argued that 58 O.S.2011, § 381 protects the homestead exemption from creditor claims against the decedent's estate. However, for the same reasons set out above, Section 381 does not control. The relevant provision in Section 381 reads, "[a]ll the property of a decedent, except as otherwise provided for the homestead and personal property set apart for the surviving wife or husband and minor child or children, shall be chargeable with the payment of the debts of the deceased. . ."
[10] Section 1223 (Okla. Stat. 1931) is also nearly identical to the modern version of the homestead allowance set out in 58 O.S.2011, § 311.
[11] The facts in Manning are analogous to the present case. In Manning, a minor grandchild was residing on the subject property at the time of his grandfather's death.
[12] Seal involved an individual who died intestate rather than the beneficiary of a decedent's will. However, this is a distinction without a difference. The general legal principle vesting property rights in heirs/beneficiaries immediately on the death of the owner is equally applicable to a testate proceeding. See Ware v. Beach, 1957 OK 166, ¶ 11, 322 P.2d 635, 639.
[13] A creditor claim is not a prerequisite to initiate suit for wrongful death. Becker v. State ex rel. Dept of Pub. Welfare, 1957 OK 102, ¶ 22, 312 P.2d 935, 940 (an action predicated on fraud did not have to be presented to the personal representative to initiate suit); Morriss v. Barton, 1947 OK 260, ¶ 0, syl. 5, 190 P.2d 451, 452 (presentation of creditor's claim is unnecessary for recovery of damages for tort committed by deceased in his lifetime).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1939 OK 468, 95 P.2d 856, 186 Okla. 30, 
DAVIS v. MORGAN
Discussed at Length

 
1947 OK 260, 190 P.2d 451, 200 Okla. 4, 
MORRISS v. BARTON
Discussed

 
1994 OK 71, 877 P.2d 597, 65 OBJ 2145, 
State ex rel. Means v. Ten (10) Acres of Land
Discussed

 
1936 OK 169, 55 P.2d 62, 176 Okla. 286, 
LEHMAN v. TUCKER
Cited

 
1935 OK 40, 40 P.2d 675, 170 Okla. 351, 
KENYON v. JENKINS
Cited

 
1935 OK 70, 40 P.2d 683, 170 Okla. 402, 
HEIN v. WAHL
Cited

 
1916 OK 113, 155 P. 206, 55 Okla. 68, 
UNION TRUST CO. v. COX
Discussed

 
1916 OK 614, 158 P. 599, 53 Okla. 777, 
CARLE v. BAMBERGER
Discussed

 
1957 OK 102, 312 P.2d 935, 
BECKER v. STATE ex rel. DEPT. OF PUBLIC WELFARE
Discussed

 
1935 OK 893, 56 P.2d 851, 176 Okla. 524, 
HEMBREE v. MAGNOLIA PETROLEUM CO.
Discussed at Length

 
1957 OK 166, 322 P.2d 635, 
WARE v. BEACH
Discussed

 
1934 OK 101, 29 P.2d 966, 167 Okla. 368, 
MANNING v. DOSHER
Discussed at Length

 
1934 OK 174, 31 P.2d 597, 168 Okla. 7, 
HARDRIDGE v. HAEDRIDGE
Discussed

 
1934 OK 299, 35 P.2d 704, 168 Okla. 550, 
SEAL v. BANES
Discussed

 
1923 OK 599, 219 P. 353, 95 Okla. 231, 
ARMSTRONG v. INDEPENDENT OIL & GAS CO.
Discussed

 
1923 OK 823, 219 P. 934, 96 Okla. 11, 
GREENSHAW v. BROWN
Discussed

 
2003 OK 63, 73 P.3d 861, 
IN RE: ARNOLD
Discussed

 
1930 OK 126, 286 P. 327, 142 Okla. 163, 
WHITE HOUSE LUMBER CO. v. HOWARD
Discussed

 
2012 OK 80, 286 P.3d 643, 
HARMON v. CRADDUCK
Discussed

 
2016 OK 97, 381 P.3d 736, 
LEE v. BUENO
Discussed

 
2018 OK 6, 411 P.3d 369, 
STRICKLAND v. STEPHENS PRODUCTION COMPANY
Discussed

 
2020 OK 5, 457 P.3d 1050, 
THE INSTITUTE FOR RESPONSIBLE ALCOHOL POLICY v. STATE ex rel. ALCOHOLIC BEVERAGE LAWS ENFORCEMENT COMM.
Discussed

 
2020 OK 56, 473 P.3d 475, 
INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed

 
2020 OK 94, 477 P.3d 1143, 
IN THE MATTER OF THE ESTATE OF FULKS
Discussed

Title 58. Probate Procedure

 
Cite
Name
Level

 
58 O.S. 311, 
Homestead - Property to be Delivered to Family
Discussed at Length

 
58 O.S. 331, 
Notice to Creditors to Present Claims
Cited

 
58 O.S. 381, 
Nonexempt Property May Be Sold for Debt
Discussed at Length

 
58 O.S. 721, 
Appealable Judgments and Orders of District Court
Cited

Title 84. Wills and Succession

 
Cite
Name
Level

 
84 O.S. 175, 
Vesting of Dispositions - Presumption
Cited

 
84 O.S. 212, 
Property Passing by Intestacy Subject to Court Control and Possession of Administrator
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA